1  Kalpana Srinivasan (237460)
   ksrinivasan@susmangodfrey.com
2  SUSMAN GODFREY L.L.P.
   1901 Avenue of the Stars, Suite 950
3  Los Angeles, California 90067-6029
   Telephone: (310) 789-3100
4  Facsimile: (310) 789-3150

5  *Attorney for Defendants AliphCom and BodyMedia, Inc.*
   (Additional Counsel for Defendants listed below signature line)
6

7              **UNITED STATES DISTRICT COURT**

8             **NORTHERN DISTRICT OF CALIFORNIA**

9

10

11  FITBIT, INC.,                          Case No. 5:15-cv-04073

12            Plaintiff,                   **DEFENDANTS ALIPHCOM d/b/a JAWBONE AND BODY MEDIA, INC.'S ANSWER AND COUNTERCLAIMS**

13  vs.

14  ALIPHCOM d/b/a JAWBONE and
    BODYMEDIA, INC.,

15            Defendants.

16

17

18

19

20

21

22

23

24

25

26

27

28

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, Defendants AliphCom d/b/a Jawbone and BodyMedia, Inc. (collectively "Jawbone") answers the allegations of the Complaint, Dkt. No. 1 ("Complaint") filed on September 8, 2015, by Fitbit, Inc. ("Fitbit."). Jawbone answers based upon actual knowledge as to itself and upon information and belief as to all other persons and events, as follows. All allegations not expressly admitted are denied.

## THE PARTIES

1.   Admitted.

2.   Admitted.

3.   Admitted.

4.   Admitted.

## JURISDICTION AND VENUE

5.   Jawbone admits that the Complaint purports to state a cause of action for patent infringement. The remainder of paragraph 5 consists of conclusions of law to which no response is required. To the extent that a response is required, Jawbone admits that this Court has jurisdiction over a properly pleaded complaint for patent infringement under 28 U.S.C. §§ 1331 and 1338.

6.   Jawbone admits that Aliphcom conducts business in this district but denies that Aliphcom's contacts with the district are continuous and systematic. Jawbone denies that AliphCom "manufactures, markets, and sells infringing products" in this or in any other district. Jawbone denies that AliphCom has caused injury to Fitbit in this or in any other district.

7.   Jawbone admits that BodyMedia conducts business in this district but denies that BodyMedia's contacts with the district are continuous and systematic. Jawbone denies that BodyMedia "manufactures, markets, and sells infringing products" in this or in any other district. Jawbone denies that BodyMedia has caused injury to Fitbit in this or in any other district.

8.     Jawbone admits that AliphCom d/b/a Jawbone is a California corporation. Jawbone denies that it has committed acts of infringement in this or in any other district. Jawbone admits that Fitbit purports to base venue under 28 U.S.C. §§ 1391(b), (c), and 1400(b).

## **PATENTS-IN-SUIT**

9.     Jawbone admits that U.S. Patent No. 9,048,923 ("the '923 patent") appears to be entitled "System and Method for Wireless Device Pairing," and that Fitbit purports to attach a copy of the '923 patent to the Complaint as Exhibit A. Jawbone denies that the '923 patent was duly and legally issued by the U.S. Patent and Trademark Office. Jawbone lacks knowledge or information regarding whether the '923 patent is assigned to Fitbit. To the extent a further response is required, Jawbone denies the remaining allegations contained in paragraph 9.

10.     Jawbone admits that U.S. Patent No. 9,026,053 ("the '053 patent") appears to be entitled "System and Method for Wireless Device Pairing," and that Fitbit purports to attach a copy of the '053 patent to the Complaint as Exhibit B. Jawbone denies that the '053 patent was duly and legally issued by the U.S. Patent and Trademark Office. Jawbone lacks knowledge or information regarding whether the '053 patent is assigned to Fitbit. To the extent a further response is required, Jawbone denies the remaining allegations contained in paragraph 10.

11.     Jawbone admits that U.S. Patent No. 9,106,307 ("the '307 patent") appears to be entitled "System and Method for Wireless Device Pairing," and that Fitbit purports to attach a copy of the '307 patent to the Complaint as Exhibit C. Jawbone denies that the '307 patent was duly and legally issued by the U.S. Patent and Trademark Office. Jawbone lacks knowledge or information regarding whether the '307 patent is assigned to Fitbit. To the extent a further response is required, Jawbone denies the remaining allegations contained in paragraph 11.

12.     Jawbone admits that Fitbit collectively refers to the '923 patent, the '053 patent, and the '307 patent as the "Patents-in-Suit." Jawbone lacks knowledge

or information regarding whether those patents are assigned to Fitbit, or whether Fitbit owns all right, title, and interest in and to those patents, and on that basis, denies. Jawbone denies that Fitbit has the right to sue and recover for the infringement of the Patents-in-Suit in this action.

## BACKGROUND

13.    Jawbone lacks knowledge or information regarding the allegations in paragraph 13 and on that basis, denies.

14.    Jawbone admits that Fitbit's product line includes the Fitbit Zip, Fitbit One, Fitbit Flex, Fitbit Charge, Fitbit Charge HR, and the Fitbit Surge. Jawbone lacks knowledge or information regarding the remainder of the allegations in paragraph 14.

15.    Jawbone admits that it markets and sells activity trackers, including the UP Move, UP24, UP2, UP3, and UP4. Jawbone denies that it manufactures activity trackers. Jawbone denies that its devices infringe any of the Patents-in-Suit. Jawbone admits that its devices may be used in conjunction with the UP App and that the combination constitutes the "UP System."

16.    Jawbone admits that AliphCom acquired BodyMedia, Inc. in April 2013. Jawbone admits that certain of its devices have multiple sensors. Jawbone denies the remaining allegations in paragraph 16.

## COUNT I

### (Infringement of U.S. Patent No. 9,048,923)

17.    Jawbone repeats and realleges its responses to paragraphs 1 through 16.

18.    Denied.

19.    Denied.

20.    Denied.

21.    Denied.

22.    Denied.

1    23.    Denied.

2    24.    Denied.

3                        **<u>Count II</u>**

4              **(Infringement of U.S. Patent No. 9,026,053)**

5    25.    Jawbone repeats and realleges its responses to paragraphs 1 through

6           24.

7    26.    Denied.

8    27.    Denied.

9    28.    Denied.

10   29.    Denied.

11   30.    Denied.

12   31.    Denied.

13   32.    Denied.

14                       **<u>COUNT III</u>**

15             **(Infringement of U.S. Patent No. 9,106,307)**

16   33.    Jawbone repeats and realleges its responses to paragraphs 1 through

17          32.

18   34.    Denied.

19   35.    Denied.

20   36.    Denied.

21   37.    Denied.

22   38.    Denied.

23   39.    Denied.

24   40.    Denied.

25                       **<u>JURY DEMAND</u>**

26   41.    No response is required to Fitbit's jury demand.

27

28

**REQUESTED RELIEF**

42.     Jawbone denies that Fitbit is entitled to judgment in its favor or any other relief.

**DEFENSES**

**FIRST AFFIRMATIVE DEFENSE – NON-INFRINGEMENT**

43.     Jawbone does not directly infringe and has not directly infringed, either literally or under the doctrine of equivalents, and does not indirectly infringe and has not indirectly infringed, by contributing to infringement or inducing infringement of, any valid and enforceable claim of any of U.S. Patent Nos. 9,048,923; 9,026,053; and/or 9,106,307 (the "Patents-in-Suit").

**SECOND AFFIRMATIVE DEFENSE – INVALIDITY**

44.     The claims of the Patents-in-Suit are invalid for failing to meet one or more of the requisite and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation §§ 101, 102, 103, 112, and/or 116.

**THIRD AFFIRMATIVE DEFENSE – NO EQUITABLE RELIEF**

45.     Fitbit's claim for injunctive relief is barred because Fitbit has an adequate remedy at law and has suffered no irreparable harm.

**FOURTH AFFIRMATIVE DEFENSE – FAILURE TO STATE A CLAIM**

46.     The Complaint fails to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**FIFTH AFFIRMATIVE DEFENSE – LACHES/ESTOPPEL/WAIVER**

47.     Fitbit's claims for relief are barred, either in whole or in part, by the equitable doctrines of laches, estoppel, and/or waiver.

**SIXTH AFFIRMATIVE DEFENSE – LIMITATION ON DAMAGES**

48.     Fitbit is barred from recovering damages arising from any alleged infringement that occurred prior to Fitbit giving Jawbone notice of the Patents-in-Suit pursuant to 35 U.S.C. § 287.

## SEVENTH AFFIRMATIVE DEFENSE – COSTS PROHIBITED

49.     Fitbit is prohibited from recovering costs in this action pursuant to 35 U.S.C. § 288.

## EIGHTH AFFIRMATIVE DEFENSE – RESERVED

50.     Jawbone reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the patent laws of the United States, and any other defenses, at law or in equity, that may now exist or in the future be available based on discovery and further investigation in this case.

## <u>COUNTERCLAIMS</u>

Counterclaim Plaintiffs AliphCom d/b/a Jawbone and BodyMedia, Inc. (collectively "Jawbone") assert counterclaims for monopolization in violation of 15 U.S.C. § 2 and for declarations of non-infringement and invalidity of one or more claims of U.S. Patent Nos. 9,048,923; 9,026,053; and 9,106,307 (the "Patents-in-Suit"), and allege as follows:

## INTRODUCTION

1.     Fitbit filed this meritless patent case as part of its by-any-means-necessary campaign to impede competitors and preserve its dominant position in the fitness-tracker market. None of Jawbone's accused products even arguably infringes the asserted patents, making it clear that Fitbit intends to use this case to intimidate and harass its most prominent competitor rather than legitimately enforce its intellectual property rights.

2.     Fitbit's anticompetitive conduct goes beyond this specious lawsuit. In a court on the other side of the country, just days before this one, Fitbit simultaneously filed an equally meritless patent case against Jawbone. Fitbit's decision to bring two separate cases in two geographically disparate courts makes sense only as harassment. In addition to multiple meritless lawsuits, Fitbit has been carrying on a pattern of employee poaching and trade secret theft from Jawbone for months.

3.     Fitbit currently holds a dominant position in the market for wearable fitness trackers. It is attempting to preserve this market power through illegitimate and unlawful attacks on Jawbone, its primary competitor. These actions constitute willful monopolization in violation of Section 2 of the Sherman Act. In this counterclaim, Jawbone seeks a remedy for Fitbit's anticompetitive misconduct. Jawbone also seeks a judicial declaration that it does not infringe the asserted patents and that those patents are invalid.

## PARTIES, JURISDICTION, AND VENUE

4.     Counterclaim Plaintiff AliphCom d/b/a Jawbone is a California corporation with its principal place of business at 99 Rhode Island Street, San Francisco, California 94103.

5.     Counterclaim Plaintiff BodyMedia, Inc. is a Delaware corporation with its principal place of business at 501 Grant Street, Union Trust Building, Suite 1075, Pittsburgh, Pennsylvania 15219. BodyMedia, Inc. is a wholly owned subsidiary of AliphCom.

6.     Counterclaim Defendant Fitbit, Inc. alleges in its Complaint that it is a Delaware corporation with its principal place of business at 405 Howard Street, San Francisco, California 94015.

7.     This Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, and 2201.

8.     To the extent venue is proper as to the Complaint pursuant to 28 U.S.C. §§ 1391(b), (c), and 1400(b), it is also proper as to these counterclaims.

9.     Fitbit has sued Jawbone claiming that Fitbit is the assignee and owner of the Patents-in-Suit and accusing Jawbone of infringing the Patents-in-Suit.

10.     An actual case or controversy exists between the parties concerning the infringement, validity, and enforceability of one or more claims of the patents-in-suit, and that controversy is ripe for adjudication by this Court.

# FACTUAL ALLEGATIONS

## I.   MARKET FOR PERSONAL FITNESS TRACKERS

11.   Both Fitbit and Jawbone design and sell personal fitness trackers. These devices monitor activity levels, sleep patterns, and other biometrics for their users. They are typically worn as a wristband or clipped on to the user's clothing. Some data may be provided to the user by the device itself, for example the device might light up or vibrate when the user meets a pre-established goal of walking a certain number of steps. In most cases, the user connects the tracker (directly or wirelessly) to a cellphone, tablet, or computer, which can then upload the data from the fitness tracker.

12.   Personal fitness trackers are generally sold as a separate, stand-alone device. Models sold by both Fitbit and Jawbone are capable of connecting with a wide range of smart phones or tablets, including those using either the Android or iOS operating systems.

13.   Although some cell phones and smart watches can, by themselves, monitor some of the same biometrics, these other devices are not reasonable substitutes for personal fitness trackers because they cost significantly more (and, of course, provide many additional features). Cell phones and smart watches are also larger and therefore more likely to interfere with both physical activity and sleep while monitoring. Customers wanting to buy a personal fitness tracker would rarely consider a cell phone or a smart watch to be a reasonable alternative.

14.   In recent years, sales of personal fitness trackers have grown faster than any other consumer electronics segment. In 2014, over 21 million personal fitness trackers were sold, more than three times the number from the previous year. Such increases are projected to continue for at least the next several years.

15.   Fitbit currently holds a dominant position in this market. As its CEO James Park explained to the New York Times financial blog DealBook, "[w]e are the clear market leader with 85 percent market share." Dealbook, *Fitbit Shares*

1   *Surge     48%     In     Market     Debut*   (June     18,     2015),

2   http://www.nytimes.com/2015/06/19/business/dealbook/fitbit-shares-surge-52-

3   percent-in-market-debut.html?_r=0   (accessed   October   27,   2015).   Jawbone   is

4   Fitbit's most prominent competitor and has generally had the second most sales in

5   the   personal   fitness   tracker   market.   Jawbone's   fitness   trackers   and   its

6   accompanying data tracking and display cell phone App have both been very well-

7   reviewed and compared favorably to offerings from Fitbit. For example, the leading

8   consumer electronics website CNET described Jawbone's UP 2 as "our favorite

9   everyday fitness brand" and the UP App as "the best all-around fitness software

10  available." Dan Graziano, *Jawbone UP 2 Review: A Stylish Band That Won't Fall*

11  *Off     Your     Wrist,     CNET*     (September     24,     2015),

12  http://www.cnet.com/products/jawbone-up2/ (accessed October 27, 2015).

13      16.    Fitbit views its market power as a crucial asset in its efforts to fend off

14  Jawbone and other competitors.  CEO James Park claims in the Dealbook Fitbit

15  article cited above, "Fitbit is synonymous with health and fitness tracking, and that

16  gives us a competitive advantage in the marketplace." In court filings, Fitbit

17  describes Jawbone as "attempting to compete in the same market" and "struggling

18  to compete against the industry leader." Defendant Fitbit, Inc.'s Notice of Motion

19  and Motion For Judgment On the Pleadings Pursuant to Fed. R. Civ. P. 12(c),

20  Alphacom D/B/A Jawbone and BodyMedia, Inc. v. Fitbit, Inc., No. 3:15-cv-2579-

21  HSG, (N.D. Cal. October 9, 2015) (No. 48). Over the course of the past year, Fitbit

22  has increasingly demonstrated its willingness to go to any lengths to thwart

23  competitors and protect its market power.

24  **II.    FITBIT'S FRIVOLOUS PATENT INFRINGEMENT CLAIMS**

25      17.    Fitbit is knowingly and willfully misusing its patents as part of its

26  efforts to protect its market power. Both in this case and in a concurrently filed case

27  in Delaware, Fitbit alleges that Jawbone infringes three of its patents. The

28

infringement allegations in both lawsuits are plainly meritless, and Fitbit had no reasonable basis for bringing either case.

### A.   Northern District of California

18.   In this litigation, Fitbit alleges that Jawbone infringes three of Fitbit's patents, U.S. Patent Nos. 9,048,923 ("the '923 patent"); 9,026,053 ("the '053 patent"); and 9,106,307 ("the '307 patent"). All three patents relate to the process known as "pairing" which connects a personal fitness tracker to a cell phone, tablet, or other device.

19.   Even a cursory examination of Jawbone's products demonstrates that they do not infringe any of these patents. All three patents require that the pairing process be initiated by a contact from the cell phone or other device and a server on the Internet. Specifically, each independent claim in these patents includes a limitation that the phone or tablet attempting to connect to the fitness tracker must send "a signal to a server that indicates the start of the pairing process." ('923 patent, claim 1; '053 patent, claim 1; '307 patent, claims 1, 5, and 16). In each claim, the server then communicates with the cell phone or tablet, providing it with certain information which the cell phone or tablet then uses as part of the pairing process, for example:

> "sending a list of detected devices eligible for pairing" ('923 patent, claim 1);
>
> "sending a user interface for pairing" ('053 patent, claim 1; '307 patent, claims 5 and 16); and
>
> "sending user data for pairing" ('307 patent, claim 1).

20.   Jawbone's fitness trackers do not perform any of these functions during the pairing process. When a user wants to connect a cell phone or other device to a Jawbone fitness tracker, the pairing is established without either the fitness tracker or the cell phone/tablet contacting any server. Nor does either device obtain any information from a server, whether it be a list of eligible devices, a user interface, or user data.

### B.  District of Delaware

21.  On September 3, 2015, Fitbit filed suit against Jawbone in the District of Delaware alleging infringement of three of Fitbit's patents.[1] [2] Copies of the Delaware Complaint and the three patents asserted in that case are attached as Exhibit 1 to this Answer.  Like the patent infringement claims asserted in this case, none of the infringement claims in the Delaware case have any factual or legal basis whatsoever.

22.  Count One of Fitbit's Delaware complaint asserts infringement of U.S. Patent No. 9,031,812 ("the '812 patent"). This patent claims a method for providing notifications to the user of a wearable fitness monitoring device. In particular, the patent addresses notifications informing the user that he or she has met a certain pre-established goal, such as walking a certain number of steps in a day. Jawbone's products do provide such notifications to the user, but not in the manner claimed in this patent. Each independent claim of the '812 patent requires "scheduling the notification message for display on the mobile device at a specified date at time" (claim 1) or "scheduling the notification message for a time window" (claim 9), or the equivalent. None of Jawbone's devices permit the scheduling of such messages. Instead, Jawbone's fitness trackers simply display the message on the associated device (cell phone, etc.) at the time the user accomplishes the goal. Because they do not allow scheduling such messages for a specified date and time or time window, Jawbone's fitness trackers clearly do not infringe the '812 patent.

23.  Count Two of Fitbit's Delaware complaint asserts infringement of U.S. Patent No. 8,909,543 ("the '543 patent"). Again, Jawbone does not infringe. In this

---

[1] On October 26, 2015, Jawbone filed a Motion to Transfer the Delaware case to the Northern District of California, a forum that is far more convenient for the parties and witnesses. *Fitbit, Inc. v. Aliphcom d/b/a Jawbone and BodyMedia, Inc.*, Case No. 1:15-cv-00775-RGA, Docs. 11-12. If transferred, the Delaware action should be consolidated and "related" to the present case pursuant to Local Rule 3-12.

[2] Just yesterday, on October 29, 2015, Fitbit filed yet another patent infringement action against Jawbone in the District of Delaware alleging infringement of three additional Fitbit's patents. *Fitbit, Inc. v. Aliphcom d/b/a Jawbone and BodyMedia, Inc.*, Case No. 1:15-cv-00990-UNA.

Count, Fitbit makes a specific allegation of infringement for only one of Jawbone's products, the UP Move fitness tracker. Del. Complaint at ¶ 26. The UP Move is a small, circular fitness tracker less than one inch in diameter and less than one-half inch thick. It is sold by Jawbone only in conjunction with a clip which is designed to attach to the user's belt or clothing. The basic UP Move is not sold with a wristband, although plastic wristbands that can hold the UP Move are sold as an accessory.

24.    All of the '543 patent's  claims address fitness trackers on wristbands and the limitations require that the motion detection electronics be "included within a band . . . in the form of a coil" (claim 1); "housed in the band" (claim 9); "included within a band formed to secure to a part of the human body" (claim 13); or describe the device as a "band including a motion detection component and a series of light emitting diodes" (claim 20). Each of these claims requires that the electronics—specifically the motion detector—be *within* or *part of* the wristband. Even configured with one of the accessory wristbands, the UP Move does not infringe these claims because the band is only a plastic holder for the fitness tracker—the band itself does not "include" the motion detection component or any other electronics.

25.    Fitbit's third claim in the Delaware complaint is for infringement of U.S. Patent No. 9,042,971 ("the '971 patent"). This patent concerns heart rate monitors included in fitness trackers. Each claim requires that the user be able to activate the heart rate monitor with "a single user-gesture." (*See* independent claims 1, 2, and 22). None of Jawbone's fitness trackers offer such a feature. There is simply no reasonable argument that any of Jawbone's products infringe the '971 patent. Fitbit's claim that the '971 patent is infringed is just as frivolous as the others in the Delaware suit and those in this case.

26.    It does not require any special skill or knowledge of Jawbone's source code or other non-public information to determine that Jawbone's devices do not

infringe the patents asserted in either this case or the Delaware case. Even a cursory investigation by Fitbit would have shown immediately that there is no reasonable basis for the infringement allegations in its two Complaints.

## III.   FITBIT'S THEFT OF JAWBONE'S TRADE SECRETS AND POACHING OF KEY EMPLOYEES

27.   In addition to meritless patent litigation, Fitbit has been engaging in a campaign to misappropriate many of Jawbone's most important assets. Early this year, Fitbit implemented its plan to, in the words of one of its recruiters, "decimate" Jawbone by hiring away key employees and stealing trade secrets. Fitbit recruiters contacted an estimated 30 percent of Jawbone's workforce and ultimately hired five key employees.

28.   Most troublingly, each of these employees pilfered Jawbone's data stores prior to their departures to bring confidential information about significant aspects of Jawbone's business to Fitbit, and in so doing breached provisions of their employment agreements with Jawbone. After these employees left to join Fitbit, Jawbone discovered that massive numbers of confidential documents had been copied within days of these employees' departure. Jawbone then filed suit in Superior Court of California, County of San Francisco, against Fitbit and the five employees and demanded the return of its trade secrets.

29.   In response to Jawbone's Motion for a Preliminary Injunction, the former employees turned over copies (but not originals which they continue to hold) of 18,000 individual electronic files and other documents taken from Jawbone. These documents included proprietary data concerning Jawbone's assets and income, research and design reports, confidential manufacturing methods, product component lists, and product specifications and diagrams for an as-yet-unreleased fitness headset. The Court granted Jawbone's preliminary injunction motion, finding that Jawbone is likely to succeed in its claim that the employees breached their agreements, and ordered the return of Jawbone's confidential

1    information.

2         30.    One area in which Fitbit concentrated its efforts to steal Jawbone's

3    trade secrets was consumer research, a known weakness for Fitbit. Over the past

4    several years, Jawbone has invested millions of dollars in comprehensive research

5    into user's preferences, expectations, and desires for future products. Rather than

6    develop its own research, Fitbit sought to steal the fruits of these efforts from

7    Jawbone by hiring away key Jawbone employees who brought with them

8    Jawbone's proprietary data.

9         31.    For example, two of the former Jawbone employees lured away by

10   Fitbit are Katherine Mogal, Jawbone's former Director of Market and Consumer

11   Experience   Insights,   and   Ana   Rosario,   a   former   Design   &   User

12   Researcher/Customer Experience employee. Both Mogal and Rosario brought

13   extensive knowledge of Jawbone's consumer research, as well as information about

14   Jawbone's marketing plans and plans for future products. A forensic investigation

15   by Jawbone disclosed that within days of her departure, Ms. Mogal accessed and

16   downloaded highly confidential Jawbone files pertaining to consumer satisfaction

17   and product feedback, raw consumer survey data, user experience studies including

18   results on usability and wearability, a discussion guide for potential study subjects,

19   and presentations comparing Jawbone's products to competitor products, including

20   Fitbit's products. The same investigation revealed that Ms. Rosario had

21   surreptitiously downloaded and copied a highly confidential Jawbone internal

22   presentation titled "Market Trends & Opportunities," containing Jawbone's

23   confidential marketing and product plans. Ms. Mogal retained an external hard

24   drive of videos containing a treasure trove of research conducted by Jawbone while

25   she was employed there. The hard drive contained, among other things, hours of

26   interviews,   in   both   transcript   and   video   format,   in   which   interviewers

27   commissioned by Jawbone had conversations with individual consumers about their

28   views on Jawbone products and their preferences with regard to audio products and

1    fitness trackers. Together, Ms. Rosario and Ms. Mogal had thousands of Jawbone's

2    documents in their possession when they left Jawbone to join Fitbit.

3        32.    Fitbit has also misappropriated Jawbone's trade secrets and expertise

4    in the field of audio. Jawbone offers next-generation headset and audio products,

5    whereas Fitbit has never offered any speaker or headset devices. Although the

6    development of audio products appears now to be a strategic objective for Fitbit,

7    the company lacks the expertise and competency to succeed in that competitive

8    market. Rather than developing that knowledge and expertise through accepted

9    means, a process that would take a significant amount of time and capital to

10   accomplish, Fitbit engaged in a systematic campaign to capitalize on Jawbone's

11   advanced knowledge and expertise in the wearables and audio device space by

12   acquiring Jawbone's trade secrets through Jawbone employees and vendors. Fitbit

13   hired one of Jawbone's developers specializing in audio products, Patrick Narron,

14   in an attempt to get an edge on Jawbone's development of audio devices gaining

15   access to Jawbone's research. As part of the same initiative, Fitbit also hired one of

16   Jawbone's Product Design Engineers, Patricio Romano, who had been leading

17   Jawbone's design efforts for a highly confidential future product.

18       33.    In addition to consumer research, Fitbit has, on information and

19   belief, used the former Jawbone employees to obtain access to information about

20   Jawbone's supply chain, gross margins, product lineup (both current and future),

21   product target costs, vendor contacts, product analysis, market trends and

22   predictions, and Jawbone's plans for future development.

23                          **COUNT I**

24        **(Non-infringement and Invalidity of the '923 Patent)**

25       34.    Jawbone realleges and incorporates paragraphs 1-33 above.

26       35.    Fitbit has sued Jawbone claiming that Fitbit is the assignee and owner

27   of the '923 Patent and accusing Jawbone of infringing that patent.

28

36.    An actual case or controversy exists between the parties concerning the infringement, validity, and enforceability of one or more claims of the '923 Patent, and that controversy is ripe for adjudication by this Court.

37.    Jawbone has not infringed, and is not infringing, the '923 patent, either directly or indirectly.

38.    One or more claims of the '923 patent are invalid for failing to meet one or more requisite conditions for patentability pursuant to Title 35 of the United States Code, including without limitation §§ 101, 102, 103, 112, and 116, and/or for failure to satisfy the requirements of other equitable doctrines.

39.    Jawbone is entitled to a declaratory judgment that it has not infringed and is not infringing the '923 patent, and that the '923 patent is invalid.

## COUNT II

### (Non-infringement and Invalidity of the '053 Patent)

40.    Jawbone realleges and incorporates paragraphs 1-39 above.

41.    Fitbit has sued Jawbone claiming that Fitbit is the assignee and owner of the '053 Patent and accusing Jawbone of infringing that patent.

42.    An actual case or controversy exists between the parties concerning the infringement, validity, and enforceability of one or more claims of the '053 Patent, and that controversy is ripe for adjudication by this Court.

43.    Jawbone has not infringed, and is not infringing, the '053 patent, either directly or indirectly.

44.    One or more claims of the '053 patent are invalid for failing to meet one or more requisite conditions for patentability pursuant to Title 35 of the United States Code, including without limitation §§ 101, 102, 103, 112, and 116, and/or for failure to satisfy the requirements of other equitable doctrines.

45.    Jawbone is entitled to a declaratory judgment that it has not infringed and is not infringing the '053 patent, and that the '053 patent is invalid.

## COUNT III

### (Non-infringement and Invalidity of the '307 Patent)

46.    Jawbone realleges and incorporates paragraphs 1-45 above.

47.    Fitbit has sued Jawbone claiming that Fitbit is the assignee and owner of the '307 Patent and accusing Jawbone of infringing that patent.

48.    An actual case or controversy exists between the parties concerning the infringement, validity, and enforceability of one or more claims of the '307 Patent, and that controversy is ripe for adjudication by this Court.

49.    Jawbone has not infringed, and is not infringing, the '307 patent, either directly or indirectly.

50.    One or more claims of the '307 patent are invalid for failing to meet one or more requisite conditions for patentability pursuant to Title 35 of the United States Code, including without limitation §§ 101, 102, 103, 112, and 116, and/or for failure to satisfy the requirements of other equitable doctrines.

51.    Jawbone is entitled to a declaratory judgment that it has not infringed and is not infringing the '307 patent, and that the '307 patent is invalid.

## COUNT IV

### (Monopolization in Violation of 15 U.S.C. § 2)

52.    Jawbone realleges and reincorporates paragraphs 1-51 above.

53.    Fitbit has violated 15 U.S.C. § 2 by monopolizing and attempting to maintain its monopoly in the United States market for personal fitness trackers.

54.    Personal fitness trackers constitute a market for antitrust purposes in the geographic area of the United States.

55.    Fitbit has market power in the market for personal fitness trackers by virtue of its significant market share. Fitbit claims that it has 85% of the market for personal fitness trackers.

56.    Fitbit has willfully maintained and attempted to extend its market power in the relevant market through unlawful anti-competitive and exclusionary

means, including: (1) encouraging key employees of Jawbone to leave and join Fitbit bringing Jawbone's confidential information with them; (2) knowingly accepting and utilizing Jawbone's confidential information and trade secrets; (3) asserting claims for patent infringement against Jawbone that have no reasonable basis; (4) filing multiple lawsuits against Jawbone in multiple venues solely for purposes of harassment.

57.    Jawbone has been injured by Fitbit's unlawful monopolization and attempt to monopolize the market for personal fitness trackers. Fitbit's unlawful conduct has imposed unjustified burdens on Jawbone and has hampered Jawbone's ability to compete fairly in the relevant market.

## DEMAND FOR JURY TRIAL

58.    In accordance with Federal Rule of Civil Procedure 38(b), Jawbone requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Jawbone prays for the following relief:

a.    That Fitbit's claims against Jawbone be dismissed with prejudice and that Fitbit takes nothing by way of its Complaint;

b.    That judgment be entered in favor of Jawbone;

c.    For a declaration that Jawbone has not infringed any claim of the '923 patent, the '053 patent, and the '307 patent, either directly or indirectly;

d.    For a declaration that each and every claim of the '923 patent, the '053 patent, and the '307 patent are invalid;

e.    For a declaration that Fitbit has engaged in unlawful monopolization in violation of 15 U.S.C. § 2;

f.    For an award of treble actual damages caused by Fitbit's anticompetitive conduct;

g.    For an award to Jawbone of its costs and reasonable attorneys' fees incurred in defending this action, pursuant to 35 U.S.C. § 285; and

h.    For such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: October 30, 2015

SUSMAN GODFREY L.L.P.
KALPANA SRINIVASAN

MAX L. TRIBBLE, JR.
(*Admitted Pro Hac Vice*)
mtribble@susmangodfrey.com
JOSEPH S. GRINSTEIN
(*Admitted Pro Hac Vice*)
jgrinstein@susmangodfrey.com
1000 Louisiana, Suite 5100
Houston, Texas 77002-5096
[Tel.] (713) 651-9366
[Fax] (713) 654-6666

GENEVIEVE VOSE WALLACE
(*Admitted Pro Hac Vice*)
gwallace@susmangodfrey.com
EDGAR G. SARGEANT
(*Admitted Pro Hac Vice*)
esargeant@susmangodfrey.com
E. LINDSAY CALKINS
(*Admitted Pro Hac Vice*)
lcalkins@susmangodfrey.com
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
[Tel.] (206) 516-3880
[Fax] (206) 516-3883

ELISHA BARRON
(*Admitted Pro Hac Vice*)
ebarron@susmangodfrey.com
560 Lexington Avenue, 15th Floor
New York, New York 10022-6828
[Tel.] (212) 336-8330
[Fax] (212) 336-3800

By:    */s/ Kalpana Srinivasan*

Kalpana Srinivasan
*Attorneys for Defendants AliphCom
and BodyMedia, Inc.*