1  Kalpana Srinivasan (237460)
   ksrinivasan@susmangodfrey.com
2  SUSMAN GODFREY L.L.P.
   1901 Avenue of the Stars, Suite 950
3  Los Angeles, California 90067-6029
   Telephone: (310) 789-3100
4  Facsimile: (310) 789-3150

5  *Attorney for Defendants AliphCom and BodyMedia, Inc.*
   (Additional Counsel for Defendants listed below signature line)

6

7              **UNITED STATES DISTRICT COURT**

8              **NORTHERN DISTRICT OF CALIFORNIA**

9

10

11 FITBIT, INC.,                          Case No. 5:15-cv-04073

12              Plaintiff,                **DEFENDANTS ALIPHCOM d/b/a
                                          JAWBONE AND BODY MEDIA,
13 vs.                                    INC.'S FIRST AMENDED
                                          ANSWER AND
14 ALIPHCOM d/b/a JAWBONE and             COUNTERCLAIMS**
   BODYMEDIA, INC.,
15
                Defendants.
16

17

18

19

20

21

22

23

24

25

26

27

28

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, Defendants AliphCom d/b/a Jawbone and BodyMedia, Inc. (collectively "Jawbone") answers the allegations of the Complaint, Dkt. No. 1 ("Complaint") filed on September 8, 2015, by Fitbit, Inc. ("Fitbit."). Jawbone answers based upon actual knowledge as to itself and upon information and belief as to all other persons and events, as follows. All allegations not expressly admitted are denied.

## THE PARTIES

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

## JURISDICTION AND VENUE

5. Jawbone admits that the Complaint purports to state a cause of action for patent infringement. The remainder of paragraph 5 consists of conclusions of law to which no response is required. To the extent that a response is required, Jawbone admits that this Court has jurisdiction over a properly pleaded complaint for patent infringement under 28 U.S.C. §§ 1331 and 1338.

6. Jawbone admits that Aliphcom conducts business in this district but denies that Aliphcom's contacts with the district are continuous and systematic. Jawbone denies that AliphCom "manufactures, markets, and sells infringing products" in this or in any other district. Jawbone denies that AliphCom has caused injury to Fitbit in this or in any other district.

7. Jawbone admits that BodyMedia conducts business in this district but denies that BodyMedia's contacts with the district are continuous and systematic. Jawbone denies that BodyMedia "manufactures, markets, and sells infringing products" in this or in any other district. Jawbone denies that BodyMedia has caused injury to Fitbit in this or in any other district.

8.     Jawbone admits that AliphCom d/b/a Jawbone is a California corporation. Jawbone denies that it has committed acts of infringement in this or in any other district. Jawbone admits that Fitbit purports to base venue under 28 U.S.C. §§ 1391(b), (c), and 1400(b).

## **PATENTS-IN-SUIT**

9.     Jawbone admits that U.S. Patent No. 9,048,923 ("the '923 patent") appears to be entitled "System and Method for Wireless Device Pairing," and that Fitbit purports to attach a copy of the '923 patent to the Complaint as Exhibit A. Jawbone denies that the '923 patent was duly and legally issued by the U.S. Patent and Trademark Office. Jawbone lacks knowledge or information regarding whether the '923 patent is assigned to Fitbit. To the extent a further response is required, Jawbone denies the remaining allegations contained in paragraph 9.

10.    Jawbone admits that U.S. Patent No. 9,026,053 ("the '053 patent") appears to be entitled "System and Method for Wireless Device Pairing," and that Fitbit purports to attach a copy of the '053 patent to the Complaint as Exhibit B. Jawbone denies that the '053 patent was duly and legally issued by the U.S. Patent and Trademark Office. Jawbone lacks knowledge or information regarding whether the '053 patent is assigned to Fitbit. To the extent a further response is required, Jawbone denies the remaining allegations contained in paragraph 10.

11.    Jawbone admits that U.S. Patent No. 9,106,307 ("the '307 patent") appears to be entitled "System and Method for Wireless Device Pairing," and that Fitbit purports to attach a copy of the '307 patent to the Complaint as Exhibit C. Jawbone denies that the '307 patent was duly and legally issued by the U.S. Patent and Trademark Office. Jawbone lacks knowledge or information regarding whether the '307 patent is assigned to Fitbit. To the extent a further response is required, Jawbone denies the remaining allegations contained in paragraph 11.

12.    Jawbone admits that Fitbit collectively refers to the '923 patent, the '053 patent, and the '307 patent as the "Patents-in-Suit." Jawbone lacks knowledge

or information regarding whether those patents are assigned to Fitbit, or whether Fitbit owns all right, title, and interest in and to those patents, and on that basis, denies. Jawbone denies that Fitbit has the right to sue and recover for the infringement of the Patents-in-Suit in this action.

## BACKGROUND

13.     Jawbone lacks knowledge or information regarding the allegations in paragraph 13 and on that basis, denies.

14.     Jawbone admits that Fitbit's product line includes the Fitbit Zip, Fitbit One, Fitbit Flex, Fitbit Charge, Fitbit Charge HR, and the Fitbit Surge. Jawbone lacks knowledge or information regarding the remainder of the allegations in paragraph 14.

15.     Jawbone admits that it markets and sells activity trackers, including the UP Move, UP24, UP2, UP3, and UP4. Jawbone denies that it manufactures activity trackers. Jawbone denies that its devices infringe any of the Patents-in-Suit. Jawbone admits that its devices may be used in conjunction with the UP App and that the combination constitutes the "UP System."

16.     Jawbone admits that AliphCom acquired BodyMedia, Inc. in April 2013. Jawbone admits that certain of its devices have multiple sensors. Jawbone denies the remaining allegations in paragraph 16.

## COUNT I

### (Infringement of U.S. Patent No. 9,048,923)

17.     Jawbone repeats and realleges its responses to paragraphs 1 through 16.

18.     Denied.

19.     Denied.

20.     Denied.

21.     Denied.

22.     Denied.

1   23.   Denied.

2   24.   Denied.

3                           **Count II**

4                   **(Infringement of U.S. Patent No. 9,026,053)**

5   25.   Jawbone repeats and realleges its responses to paragraphs 1 through

6          24.

7   26.   Denied.

8   27.   Denied.

9   28.   Denied.

10  29.   Denied.

11  30.   Denied.

12  31.   Denied.

13  32.   Denied.

14                          **COUNT III**

15                  **(Infringement of U.S. Patent No. 9,106,307)**

16  33.   Jawbone repeats and realleges its responses to paragraphs 1 through

17         32.

18  34.   Denied.

19  35.   Denied.

20  36.   Denied.

21  37.   Denied.

22  38.   Denied.

23  39.   Denied.

24  40.   Denied.

25                          **JURY DEMAND**

26  41.   No response is required to Fitbit's jury demand.

27

28

DEFENDANTS' FIRST AMENDED ANSWER
AND COUNTERCLAIMS                          4                    Case No. 5:15-CV-04073
4066356v1/014972

**REQUESTED RELIEF**

42.    Jawbone denies that Fitbit is entitled to judgment in its favor or any other relief.

**DEFENSES**

**FIRST AFFIRMATIVE DEFENSE – NON-INFRINGEMENT**

43.    Jawbone does not directly infringe and has not directly infringed, either literally or under the doctrine of equivalents, and does not indirectly infringe and has not indirectly infringed, by contributing to infringement or inducing infringement of, any valid and enforceable claim of any of U.S. Patent Nos. 9,048,923; 9,026,053; and/or 9,106,307 (the "Patents-in-Suit").

**SECOND AFFIRMATIVE DEFENSE – INVALIDITY**

44.    The claims of the Patents-in-Suit are invalid for failing to meet one or more of the requisite and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation §§ 101, 102, 103, 112, and/or 116.

**THIRD AFFIRMATIVE DEFENSE – NO EQUITABLE RELIEF**

45.    Fitbit's claim for injunctive relief is barred because Fitbit has an adequate remedy at law and has suffered no irreparable harm.

**FOURTH AFFIRMATIVE DEFENSE – FAILURE TO STATE A CLAIM**

46.    The Complaint fails to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**FIFTH AFFIRMATIVE DEFENSE – LACHES/ESTOPPEL/WAIVER**

47.    Fitbit's claims for relief are barred, either in whole or in part, by the equitable doctrines of laches, estoppel, and/or waiver.

**SIXTH AFFIRMATIVE DEFENSE – LIMITATION ON DAMAGES**

48.    Fitbit is barred from recovering damages arising from any alleged infringement that occurred prior to Fitbit giving Jawbone notice of the Patents-in-Suit pursuant to 35 U.S.C. § 287.

## SEVENTH AFFIRMATIVE DEFENSE – COSTS PROHIBITED

49.     Fitbit is prohibited from recovering costs in this action pursuant to 35 U.S.C. § 288.

## EIGHTH AFFIRMATIVE DEFENSE – RESERVED

50.     Jawbone reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the patent laws of the United States, and any other defenses, at law or in equity, that may now exist or in the future be available based on discovery and further investigation in this case.

## <u>COUNTERCLAIMS</u>

Counterclaim Plaintiffs AliphCom d/b/a Jawbone and BodyMedia, Inc. (collectively "Jawbone") assert counterclaims for monopolization in violation of 15 U.S.C. § 2 and for declarations of non-infringement and invalidity of one or more claims of U.S. Patent Nos. 9,048,923; 9,026,053; and 9,106,307 (the "Patents-in-Suit"), and allege as follows:

### INTRODUCTION

1.     Fitbit filed this meritless patent case as part of its by-any-means-necessary campaign to impede competitors and preserve its dominant position in the fitness-tracker market. None of Jawbone's accused products even arguably infringes the asserted patents, making it clear that Fitbit intends to use this case to intimidate and harass its most prominent competitor rather than legitimately enforce its intellectual property rights.

2.     Fitbit's anticompetitive conduct goes beyond this specious lawsuit. In a court on the other side of the country, just days before this one, Fitbit simultaneously filed an equally meritless patent case against Jawbone. Fitbit's decision to bring two separate cases in two geographically disparate courts makes sense only as harassment. In addition to multiple meritless lawsuits, Fitbit has been carrying on a pattern of employee poaching and trade secret theft from Jawbone for months.

3.     Fitbit currently holds a dominant position in the market for connected wearable fitness trackers. It is attempting to preserve this market power through illegitimate and unlawful attacks on Jawbone, its primary competitor. These actions constitute willful monopolization in violation of Section 2 of the Sherman Act. In this counterclaim, Jawbone seeks a remedy for Fitbit's anticompetitive misconduct. Jawbone also seeks a judicial declaration that it does not infringe the asserted patents and that those patents are invalid.

### PARTIES, JURISDICTION, AND VENUE

4.     Counterclaim Plaintiff AliphCom d/b/a Jawbone is a California corporation with its principal place of business at 99 Rhode Island Street, San Francisco, California 94103.

5.     Counterclaim Plaintiff BodyMedia, Inc. is a Delaware corporation with its principal place of business at 501 Grant Street, Union Trust Building, Suite 1075, Pittsburgh, Pennsylvania 15219. BodyMedia, Inc. is a wholly owned subsidiary of AliphCom.

6.     Counterclaim Defendant Fitbit, Inc. alleges in its Complaint that it is a Delaware corporation with its principal place of business at 405 Howard Street, San Francisco, California 94015.

7.     This Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, and 2201.

8.     To the extent venue is proper as to the Complaint pursuant to 28 U.S.C. §§ 1391(b), (c), and 1400(b), it is also proper as to these counterclaims.

9.     Fitbit has sued Jawbone claiming that Fitbit is the assignee and owner of the Patents-in-Suit and accusing Jawbone of infringing the Patents-in-Suit.

10.     An actual case or controversy exists between the parties concerning the infringement, validity, and enforceability of one or more claims of the patents-in-suit, and that controversy is ripe for adjudication by this Court.

## FACTUAL ALLEGATIONS

### I.   MARKET FOR CONNECTED FITNESS TRACKERS

11.   Both Fitbit and Jawbone design and sell fitness trackers. These devices monitor activity levels, sleep patterns, and other biometrics for their users. They are typically worn as a wristband or clipped on to the user's clothing. Some data may be provided to the user by the device itself, for example the device might light up or vibrate when the user meets a pre-established goal of walking a certain number of steps. In most cases, the user connects the tracker (directly or wirelessly) to a smart phone, tablet, or computer, which can then upload the data from the fitness tracker.

12.   Both Fitbit and Jawbone also design and offer branded "Fitness Apps"—programs that run on a user's smart phone or other device and display data collected by the tracker along with other personal health and fitness information. Through the Internet, each Fitness App permits the user to connect with friends using the same fitness tracker and with other users around the world.

13.   Fitbit and Jawbone's Fitness Apps distinguish their fitness trackers from other devices that can provide some of the same functionality. Basic pedometers from manufacturers such as Competitive Sport or OZO have no associated Fitness App and more limited data tracking. Some smart phones and smart watches can monitor some of the same biometrics as fitness trackers, but these other devices are not reasonable substitutes for fitness trackers because they cost significantly more (and, of course, provide many additional features). Smart phones and smart watches are also larger and therefore more likely to interfere with both physical activity and sleep while monitoring. Customers wanting to buy a fitness tracker would rarely consider a simple pedometer, a smart phone, or a smart watch to be a reasonable alternative.

14.   In addition, the community of users associated with Fitbit and Jawbone Fitness Apps provide significant benefits not available with other fitness trackers. A "connected fitness tracker" is one which has an associated Fitness App and

associated community of users accessible through the Internet. Consumers wishing to purchase a fitness tracker with which they can share and compare data online or engage in online competitions based on biometric measurements, must acquire a connected fitness tracker. As a result of these unique abilities and advantages, there is a distinct market for connected fitness trackers.

15.     In pleadings filed with the International Trade Commission, Fitbit itself recognizes the existence of the connected fitness tracker market, as well as its own dominant position within that market: "Fitbit has built an extensive and acclaimed U.S. industry and holds a dominant share in the connected activity tracker market." Verified Complaint of Fitbit, Inc. Under Section 337 of the Tariff Act of 1930, As Amended, October 28, 2015, at ¶ 4. As Fitbit's CEO James Park explained to the New York Times financial blog DealBook, "[w]e are the clear market leader with 85 percent market share." Dealbook, *Fitbit Shares Surge 48% In Market Debut* (June 18, 2015), http://www.nytimes.com/2015/06/19/business/dealbook/fitbit-shares-surge-52-percent-in-market-debut.html?_r=0 (accessed October 27, 2015).

16.     Fitbit's self-professed dominance in the connected fitness tracker market is protected by barriers to entry. In particular, the community of users associated with Fitbit's Fitness App generates network effects that impede competition from potential new market entrants. Because the different manufacturers' networks of users do not have access to each other, consumers interested in connecting with others using fitness trackers will naturally be drawn to the fitness tracker with the largest user base. Other brands of fitness tracker, even if they are less expensive or offer additional features, will have difficulty attracting users who are already committed (or who have friends who are already committed) to the large network controlled by Fitbit.

17.     Jawbone is Fitbit's most prominent competitor and has generally had the second most sales in the connected fitness tracker market. Jawbone's fitness

trackers and its accompanying Fitness App have both been very well-reviewed and compared favorably to offerings from Fitbit. For example, the leading consumer electronics website CNET described Jawbone's UP 2 as "our favorite everyday fitness brand" and the UP App as "the best all-around fitness software available." Dan Graziano, Jawbone UP 2 Review: A Stylish Band That Won't Fall Off Your Wrist, CNET (September 24, 2015), http://www.cnet.com/products/jawbone-up2/ (accessed October 27, 2015).

18.     Fitbit views its market power as a crucial asset in its efforts to fend off Jawbone and other competitors. CEO James Park claims in the Dealbook Fitbit article cited above, "Fitbit is synonymous with health and fitness tracking, and that gives us a competitive advantage in the marketplace." In court filings, Fitbit describes Jawbone as "attempting to compete in the same market" and "struggling to compete against the industry leader." Defendant Fitbit, Inc.'s Notice of Motion and Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c), AliphCom D/B/A Jawbone and BodyMedia, Inc. v. Fitbit, Inc., No. 3:15-cv-2579-HSG, (N.D. Cal. October 9, 2015) (No. 48). Over the course of the past year, Fitbit has increasingly demonstrated its willingness to go to any lengths to thwart competitors and protect its market power.

**FITBIT'S FRIVOLOUS PATENT INFRINGEMENT CLAIMS**

19.     Fitbit is knowingly and willfully misusing its patents as part of its efforts to protect its market power. Both in this case and in a concurrently filed case in Delaware, Fitbit alleges that Jawbone infringes three of its patents. The infringement allegations in both lawsuits are plainly meritless, and Fitbit had no reasonable basis for bringing either case.

**A.     Northern District of California**

20.     In this litigation, Fitbit alleges that Jawbone infringes three of Fitbit's patents, U.S. Patent Nos. 9,048,923 ("the '923 patent"); 9,026,053 ("the '053 patent"); and 9,106,307 ("the '307 patent"). All three patents relate to the process

1  known as "pairing" which connects a personal fitness tracker to a cell phone, tablet,

2  or other device.

3      21.    Even a cursory examination of Jawbone's products demonstrates that

4  they do not infringe any of these patents. All three patents require that the pairing

5  process be initiated by a contact from the smart phone or other device and a server.

6  Specifically, each independent claim in these patents includes a limitation that the

7  phone or tablet attempting to connect to the fitness tracker must send "a signal to a

8  server that indicates the start of the pairing process." ('923 patent, claim 1; '053

9  patent, claim 1; '307 patent, claims 1, 5, and 16). In each claim, the server then

10  communicates with the smart phone or tablet, providing it with certain information

11  which the smart phone or tablet then uses as part of the pairing process, for

12  example:

13          "sending a list of detected devices eligible for pairing" ('923 patent, claim 1);

14          "sending a user interface for pairing" ('053 patent, claim 1; '307 patent,

15              claims 5 and 16); and

16          "sending user data for pairing" ('307 patent, claim 1).

17      22.    Jawbone's fitness trackers do not perform any of these functions

18  during the pairing process. When a user wants to connect a smart phone or other

19  device to a Jawbone fitness tracker, the pairing is established without either the

20  fitness tracker or the smart phone/tablet contacting any server. Nor does either

21  device obtain any information from a server, whether it be a list of eligible devices,

22  a user interface, or user data.

23      **B.    District of Delaware**

24      23.    On September 3, 2015, Fitbit filed suit against Jawbone in the District

25  of Delaware alleging infringement of three of Fitbit's patents.[1] Copies of the

26  ────────────────

27  [1] On December 22, 2015, the Delaware District Court granted Jawbone's Motion to Transfer the
Delaware case to the Northern District of California, a forum that is far more convenient for the
parties and witnesses. Jawbone contends that the Delaware action should be consolidated and

28  "related" to the present case pursuant to Local Rule 3-12. Although this Delaware-filed case has
now been transferred to this Court, for clarity it is referred to as the "Delaware case" in this

1  Delaware Complaint and the three patents asserted in that case are attached as

2  Exhibit 1 to this Answer. Like the patent infringement claims asserted in this case,

3  none of the infringement claims in the Delaware case have any factual or legal basis

4  whatsoever. [2]

5      24.     Count One of Fitbit's Delaware complaint asserts infringement of U.S.

6  Patent No. 9,031,812 ("the '812 patent"). This patent claims a method for providing

7  notifications to the user of a wearable fitness monitoring device. In particular, the

8  patent addresses notifications informing the user that he or she has met a certain

9  pre-established goal, such as walking a certain number of steps in a day. Jawbone's

10  products do provide such notifications to the user, but not in the manner claimed in

11  this patent. Each independent claim of the '812 patent requires "scheduling the

12  notification message for display on the mobile device at a specified date at time"

13  (claim 1) or "scheduling the notification message for a time window" (claim 9), or

14  the equivalent. None of Jawbone's devices permit the scheduling of such messages.

15  Instead, Jawbone's fitness trackers simply display the message on the associated

16  device (smart phone, etc.) at the time the user accomplishes the goal. Because they

17  do not allow scheduling such messages for a specified date and time or time

18  window, Jawbone's fitness trackers clearly do not infringe the '812 patent.

19      25.     Count Two of Fitbit's Delaware complaint asserts infringement of U.S.

20  Patent No. 8,909,543 ("the '543 patent"). Again, Jawbone does not infringe. In this

21  Count, Fitbit makes a specific allegation of infringement for only one of Jawbone's

22  products, the UP Move fitness tracker. Del. Complaint at ¶ 26. The UP Move is a

23  small, circular fitness tracker less than one inch in diameter and less than one-half

24  inch thick. It is sold by Jawbone only in conjunction with a clip which is designed

25

26  (… cont'd)
   Amended Answer.

27  [2] On October 29, 2015, Fitbit filed yet another patent infringement action against Jawbone in the
   District of Delaware alleging infringement of three additional Fitbit's patents. *Fitbit, Inc. v.*

28  *AliphCom d/b/a Jawbone and BodyMedia, Inc.*, Case No. 1:15-cv-00990-UNA. That case has
   been stayed pursuant to 28 U.S.C. § 1559 because of related proceedings before the ITC.

1    to attach to the user's belt or clothing. The basic UP Move is not sold with a

2    wristband, although plastic wristbands that can hold the UP Move are sold as an

3    accessory.

4          26.    All of the '543 patent's claims address fitness trackers on wristbands

5    and the limitations require that the motion detection electronics be "included within

6    a band . . . in the form of a coil" (claim 1); "housed in the band" (claim 9);

7    "included within a band formed to secure to a part of the human body" (claim 13);

8    or describe the device as a "band including a motion detection component and a

9    series of light emitting diodes" (claim 20). Each of these claims requires that the

10   electronics—specifically the motion detector—be *within* or *part of* the wristband.

11   Even configured with one of the accessory wristbands, the UP Move does not

12   infringe these claims because the band is only a plastic holder for the fitness

13   tracker—the band itself does not "include" the motion detection component or any

14   other electronics.

15         27.    Fitbit's third claim in the Delaware complaint is for infringement of

16   U.S. Patent No. 9,042,971 ("the '971 patent"). This patent concerns heart rate

17   monitors included in fitness trackers. Each claim requires that the user be able to

18   activate the heart rate monitor with "a single user-gesture." (*See* independent claims

19   1, 2, and 22). None of Jawbone's fitness trackers offer such a feature. There is

20   simply no reasonable argument that any of Jawbone's products infringe the '971

21   patent. Fitbit's claim that the '971 patent is infringed is just as frivolous as the

22   others in the Delaware suit and those in this case.

23         28.    It does not require any special skill or knowledge of Jawbone's source

24   code or other non-public information to determine that Jawbone's devices do not

25   infringe the patents asserted in either this case or the Delaware case. Even a cursory

26   investigation by Fitbit would have shown immediately that there is no reasonable

27   basis for the infringement allegations in its two Complaints.

28

## II.   FITBIT'S THEFT OF JAWBONE'S TRADE SECRETS AND POACHING OF KEY EMPLOYEES

29.     In addition to meritless patent litigation, Fitbit has been engaging in a campaign to misappropriate many of Jawbone's most important assets. Early in 2015, Fitbit implemented its plan to, in the words of one of its recruiters, "decimate" Jawbone by hiring away key employees and stealing trade secrets. Fitbit recruiters contacted an estimated 30 percent of Jawbone's workforce and ultimately hired five key employees.

30.     Most troublingly, each of these employees pilfered Jawbone's data stores prior to their departures to bring confidential information about significant aspects of Jawbone's business to Fitbit, and in so doing breached provisions of their employment agreements with Jawbone. After these employees left to join Fitbit, Jawbone discovered that massive numbers of confidential documents had been copied within days of these employees' departure. Jawbone then filed suit in Superior Court of California, County of San Francisco, against Fitbit and the five employees and demanded the return of its trade secrets.

31.     In response to Jawbone's Motion for a Preliminary Injunction, the former employees turned over copies (but not originals which they continue to hold) of 18,000 individual electronic files and other documents taken from Jawbone. These documents included proprietary data concerning Jawbone's assets and income, research and design reports, confidential manufacturing methods, product component lists, and product specifications and diagrams for an as-yet-unreleased fitness headset. The Court granted Jawbone's preliminary injunction motion, finding that Jawbone is likely to succeed in its claim that the employees breached their agreements, and ordered the return of Jawbone's confidential information.

32.     One area in which Fitbit concentrated its efforts to steal Jawbone's trade secrets was consumer research, a known weakness for Fitbit. Over the past

1    several years, Jawbone has invested millions of dollars in comprehensive research

2    into user's preferences, expectations, and desires for future products. Rather than

3    develop its own research, Fitbit sought to steal the fruits of these efforts from

4    Jawbone by hiring away key Jawbone employees who brought with them

5    Jawbone's proprietary data.

6        33.    For example, two of the former Jawbone employees lured away by

7    Fitbit are Katherine Mogal, Jawbone's former Director of Market and Consumer

8    Experience Insights, and Ana Rosario, a former Design & User

9    Researcher/Customer Experience employee. Both Mogal and Rosario brought

10   extensive knowledge of Jawbone's consumer research, as well as information about

11   Jawbone's marketing plans and plans for future products. A forensic investigation

12   by Jawbone disclosed that within days of her departure, Ms. Mogal accessed and

13   downloaded highly confidential Jawbone files pertaining to consumer satisfaction

14   and product feedback, raw consumer survey data, user experience studies including

15   results on usability and wearability, a discussion guide for potential study subjects,

16   and presentations comparing Jawbone's products to competitor products, including

17   Fitbit's products. The same investigation revealed that Ms. Rosario had

18   surreptitiously downloaded and copied a highly confidential Jawbone internal

19   presentation titled "Market Trends & Opportunities," containing Jawbone's

20   confidential marketing and product plans. Ms. Mogal retained an external hard

21   drive of videos containing a treasure trove of research conducted by Jawbone while

22   she was employed there. The hard drive contained, among other things, hours of

23   interviews, in both transcript and video format, in which interviewers

24   commissioned by Jawbone had conversations with individual consumers about their

25   views on Jawbone products and their preferences with regard to audio products and

26   fitness trackers. Together, Ms. Rosario and Ms. Mogal had thousands of Jawbone's

27   documents in their possession when they left Jawbone to join Fitbit.

28       34.    Fitbit has also misappropriated Jawbone's trade secrets and expertise

in the field of audio. Jawbone offers next-generation headset and audio products, whereas Fitbit has never offered any speaker or headset devices. Although the development of audio products appears now to be a strategic objective for Fitbit, the company lacks the expertise and competency to succeed in that competitive market. Rather than developing that knowledge and expertise through accepted means, a process that would take a significant amount of time and capital to accomplish, Fitbit engaged in a systematic campaign to capitalize on Jawbone's advanced knowledge and expertise in the wearables and audio device space by acquiring Jawbone's trade secrets through Jawbone employees and vendors. Fitbit hired one of Jawbone's developers specializing in audio products, Patrick Narron, in an attempt to get an edge on Jawbone's development of audio devices gaining access to Jawbone's research. As part of the same initiative, Fitbit also hired one of Jawbone's Product Design Engineers, Patricio Romano, who had been leading Jawbone's design efforts for a highly confidential future product.

35.    In addition to consumer research, Fitbit has, on information and belief, used the former Jawbone employees to obtain access to information about Jawbone's supply chain, gross margins, product lineup (both current and future), product target costs, vendor contacts, product analysis, market trends and predictions, and Jawbone's plans for future development.

36.    Fitbit's misconduct harms consumers as well as Jawbone. For example, Fitbit's misappropriation of Jawbone's trade secrets, including innovative audio technology and consumer research, reduces Jawbone's economic incentive to invest in developing such assets, and therefore reduces the range of products and features that flows from such investments. Similarly, Fitbit's meritless patent claims create an economic and intellectual drain on Jawbone's resources and prevent investment of those same resources in creating innovative products. And Fitbit's market power in the connected fitness tracker market gives it the power to raise prices above the competitive level.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT I

### (Non-infringement and Invalidity of the '923 Patent)

37.     Jawbone realleges and incorporates paragraphs 1-33 above.

38.     Fitbit has sued Jawbone claiming that Fitbit is the assignee and owner of the '923 Patent and accusing Jawbone of infringing that patent.

39.     An actual case or controversy exists between the parties concerning the infringement, validity, and enforceability of one or more claims of the '923 Patent, and that controversy is ripe for adjudication by this Court.

40.     Jawbone has not infringed, and is not infringing, the '923 patent, either directly or indirectly.

41.     One or more claims of the '923 patent are invalid for failing to meet one or more requisite conditions for patentability pursuant to Title 35 of the United States Code, including without limitation §§ 101, 102, 103, 112, and 116, and/or for failure to satisfy the requirements of other equitable doctrines.

42.     Jawbone is entitled to a declaratory judgment that it has not infringed and is not infringing the '923 patent, and that the '923 patent is invalid.

## COUNT II

### (Non-infringement and Invalidity of the '053 Patent)

43.     Jawbone realleges and incorporates paragraphs 1-39 above.

44.     Fitbit has sued Jawbone claiming that Fitbit is the assignee and owner of the '053 Patent and accusing Jawbone of infringing that patent.

45.     An actual case or controversy exists between the parties concerning the infringement, validity, and enforceability of one or more claims of the '053 Patent, and that controversy is ripe for adjudication by this Court.

46.     Jawbone has not infringed, and is not infringing, the '053 patent, either directly or indirectly.

47.     One or more claims of the '053 patent are invalid for failing to meet one or more requisite conditions for patentability pursuant to Title 35 of the United

States Code, including without limitation §§ 101, 102, 103, 112, and 116, and/or for failure to satisfy the requirements of other equitable doctrines.

48.    Jawbone is entitled to a declaratory judgment that it has not infringed and is not infringing the '053 patent, and that the '053 patent is invalid.

## COUNT III

## (Non-infringement and Invalidity of the '307 Patent)

49.    Jawbone realleges and incorporates paragraphs 1-45 above.

50.    Fitbit has sued Jawbone claiming that Fitbit is the assignee and owner of the '307 Patent and accusing Jawbone of infringing that patent.

51.    An actual case or controversy exists between the parties concerning the infringement, validity, and enforceability of one or more claims of the '307 Patent, and that controversy is ripe for adjudication by this Court.

52.    Jawbone has not infringed, and is not infringing, the '307 patent, either directly or indirectly.

53.    One or more claims of the '307 patent are invalid for failing to meet one or more requisite conditions for patentability pursuant to Title 35 of the United States Code, including without limitation §§ 101, 102, 103, 112, and 116, and/or for failure to satisfy the requirements of other equitable doctrines.

54.    Jawbone is entitled to a declaratory judgment that it has not infringed and is not infringing the '307 patent, and that the '307 patent is invalid.

## COUNT IV

## (Monopolization in Violation of 15 U.S.C. § 2)

55.    Jawbone realleges and reincorporates paragraphs 1-51 above.

56.    Fitbit has violated 15 U.S.C. § 2 by monopolizing and attempting to maintain its monopoly in the United States market for connected fitness trackers.

57.    Connected fitness trackers constitute a market for antitrust purposes in the geographic area of the United States.

58.     Fitbit has market power in the market for connected fitness trackers by virtue of its significant market share.   Fitbit's market power is protected by significant barriers to entry, including the "network effect" benefits Fitbit obtains from its existing user base.

59.     Fitbit has willfully maintained and attempted to extend its market power in the relevant market through unlawful anti-competitive and exclusionary means, including: (1) encouraging key employees of Jawbone to leave and join Fitbit bringing Jawbone's confidential information with them; (2) knowingly accepting and utilizing Jawbone's confidential information and trade secrets; (3) asserting claims for patent infringement against Jawbone that have no reasonable basis; (4) filing multiple lawsuits against Jawbone in multiple venues solely for purposes of harassment.

60.     Jawbone has been injured by Fitbit's unlawful monopolization and attempt to monopolize the market for personal fitness trackers. Fitbit's unlawful conduct has imposed unjustified burdens on Jawbone and has hampered Jawbone's ability to compete fairly in the relevant market.

61.     Fitbit's unlawful attempts to impede competition by Jawbone have also harmed consumers. As a result of Fitbit's anticompetitive conduct, consumers have fewer choices for connected fitness trackers and innovation in that market has been impeded. Fitbit's unlawfully maintained market power also gives Fitbit the ability to raise its prices higher than they would be in a competitive market.

## **DEMAND FOR JURY TRIAL**

62.     In accordance with Federal Rule of Civil Procedure 38(b), Jawbone requests a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

Jawbone prays for the following relief:

a.     That Fitbit's claims against Jawbone be dismissed with prejudice and that Fitbit takes nothing by way of its Complaint;

1

    b.      That judgment be entered in favor of Jawbone;

2

    c.      For a declaration that Jawbone has not infringed any claim of the '923

3

              patent, the '053 patent, and the '307 patent, either directly or

4

              indirectly;

5

    d.      For a declaration that each and every claim of the '923 patent, the '053

6

              patent, and the '307 patent are invalid;

7

    e.      For a declaration that Fitbit has engaged in unlawful monopolization in

8

              violation of 15 U.S.C. § 2;

9

    f.      For an award of treble actual damages caused by Fitbit's

10

              anticompetitive conduct;

11

    g.      For an award to Jawbone of its costs and reasonable attorneys' fees

12

              incurred in defending this action, pursuant to 35 U.S.C. § 285; and

13

    h.      For such other and further relief as this Court deems just and proper.

14

15

Dated: October 30, 2015        Respectfully submitted,

16

                                     KALPANA SRINIVASAN
ksrinivasan@susmangodfrey.com

17

                                     MAX L. TRIBBLE, JR.
(*Admitted Pro Hac Vice*)

18

                                     mtribble@susmangodfrey.com
JOSEPH S. GRINSTEIN

19

                                     (*Admitted Pro Hac Vice*)
jgrinstein@susmangodfrey.com

20

                                     1000 Louisiana, Suite 5100
Houston, Texas 77002-5096

21

                                     [Tel.] (713) 651-9366
[Fax] (713) 654-6666

22

23

                                     GENEVIEVE VOSE WALLACE
(*Admitted Pro Hac Vice*)

24

                                     gwallace@susmangodfrey.com
EDGAR G. SARGEANT

25

                                     (*Admitted Pro Hac Vice*)
esargeant@susmangodfrey.com

26

                                     E. LINDSAY CALKINS
(*Admitted Pro Hac Vice*)

27

                                     lcalkins@susmangodfrey.com
1201 Third Avenue, Suite 3800

28

                                     Seattle, Washington 98101-3000
[Tel.] (206) 516-3880
[Fax] (206) 516-3883

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ELISHA BARRON
(*Admitted Pro Hac Vice*)
ebarron@susmangodfrey.com
560 Lexington Avenue, 15th Floor
New York, New York 10022-6828
[Tel.] (212) 336-8330
[Fax] (212) 336-3800

By:   */s/ Edgar G. Sargent*
_____
Edgar G. Sargent
*Attorneys for Defendants AliphCom
and BodyMedia, Inc.*