KALPANA SRINIVASAN (237460)
ksrinivasan@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, California 90067-6029
[Tel.] (310) 789-3100
[Fax] (310) 789-3150

MAX L. TRIBBLE, JR. (*Pro Hac Vice*)
mtribble@susmangodfrey.com
JOSEPH S. GRINSTEIN (*Pro Hac Vice*)
jgrinstein@susmangodfrey.com
1000 Louisiana, Suite 5100
Houston, Texas 77002-5096
[Tel.] (713) 651-9366
[Fax] (713) 654-6666

*Attorney for Defendants AliphCom and Bodymedia, Inc.*
(Additional Counsel for Plaintiffs listed below signature line)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FITBIT, INC.<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ALIPHCOM d/b/a JAWBONE and BODYMEDIA, INC.<br><br>　　　　　Defendants. | Case No: 5:15-cv-04073-EJD<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO BIFURCATE AND STAY DEFENDANTS' ANTITRUST COUNTERCLAIM**<br><br>Date: June 2, 2016<br>Time: 9:00 a.m.<br>Courtroom: 4<br>Judge: Hon. Edward J. Davila<br><br>**JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

**Page**

I.   THE CIRCUMSTANCES DO NOT WARRANT BIFURCATION AND STAY OF JAWBONE'S ANTITRUST COUNTERCLAIM .................................................................. 2

   A.   Deferring Discovery on Issues Directly Relevant to the Antitrust Claims Will Result in Duplicative Discovery and Will Not Increase Efficiency for the Parties or the Court. ....................................................................................................................... 2

   B.   Any Efficiency Gained by Stay and Bifurcation is Outweighed by the Harm to Jawbone from Fitbit's Ability to Buttress and Further Amass Market Power ........ 5

   C.   Even if the Court Decides to Bifurcate the Antitrust Counterclaim it Should Allow Discovery to Proceed ................................................................................................ 6

II.  CONCLUSION ................................................................................................................ 7

i

# TABLE OF AUTHORITIES

**Federal Cases**

*ASM Am., Inc. v. Genus, Inc.*,
   2002 WL 24444 (N.D. Cal. Jan. 9, 2002) .................................................................................. 6

*Columbia v. Omni Outdoor Advertising, Inc.*,
   499 U.S. 365 (1991) ................................................................................................................ 2

*Ecrix Corp. v. Exabyte Corp.*,
   191 F.R.D. 611 (D. Colo. 2000) ............................................................................................... 6

*In re Innotron Diagnostics*,
   800 F.2d 1077 (Fed. Cir. 1986) ............................................................................................ 2, 6

*Nat'l Video Corp.*,
   297 F. Supp. 981 (N.D. Ill. 1968) ............................................................................................ 6

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*,
   508 U.S. 49 (1993) ............................................................................................................. 2, 4

**State Cases**

9 C. Wright & A. Miller, *Federal Practice and Procedure,* § 2388 (1971) .................................... 2

Fitbit, Inc. ("Fitbit") has engaged in a brazen litigation strategy characterized by the filing of a series of retaliatory, meritless, piecemeal litigation in district courts on opposite sides of the country, with no justification other than to harm its most prominent competitor in the market for wearable activity trackers -- defendants Aliphcom d/b/a Jawbone and Bodymedia, Inc. ("Jawbone").  In an effort to consolidate and prolong its dominant position in that market, and distract from the lack of merit of its patent claims against Jawbone, Fitbit seeks to stay Jawbone's antitrust counterclaim.  It does so based on cookie-cutter arguments that do not warrant a stay in the circumstances here, and irrelevant and unsupported assertions that Jawbone's antitrust claims lack merit.

For example, Fitbit seizes upon Jawbone's statements in its affirmative investigation in the International Trade Commission ("ITC") – which asserts against Fitbit infringement of five patents as well as theft of trade secrets – that the market for wearable fitness trackers would, *in the absence of Fitbit's infringing products, if the ITC issued the sought after exclusion of these products* remain "highly competitive," with "strong economic incentives for continuing research and development."  But these ITC allegations relate to a different market from the one at issue in Jawbone's antitrust claim.  Here, the market in question is the crucial sub-market for *connected* fitness trackers with a community of on-line users.  In this sub-market, Fitbit has already established market power protected by substantial barriers to entry.  Delay in addressing Fitbit's unlawful anticompetitive conduct will allow it to further entrench its market position.  Ultimately, the "burgeoning" market Jawbone describes for wearable fitness trackers more generally may be in peril because connected fitness trackers are expected to make up an increasingly large share of the overall market over time.  A stay of Jawbone's antitrust claims would allow Fitbit to consolidate and bolster its dominant position in the relevant market irreparably, in direct contravention of the aims of the Sherman Antitrust Act.

## I. THE CIRCUMSTANCES DO NOT WARRANT BIFURCATION AND STAY OF JAWBONE'S ANTITRUST COUNTERCLAIM

Federal Rule 42(b) grants district courts discretion to try claims, including counterclaims, separately for "convenience, to avoid prejudice, or to expedite and economize" the proceedings. The "major consideration" under Rule 42(b) "is directed toward the choice most likely to result in a *just* final disposition of the litigation." *In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986) (*citing* 9 C. Wright & A. Miller, *Federal Practice and Procedure,* § 2388 (1971)) (emphasis supplied). Unlike the cases relied upon by Fitbit, bifurcating and staying Jawbone's antitrust counterclaim here would create, rather than avoid, prejudice, while offering little in the way of efficiency or preserved resources.

### A. Deferring Discovery on Issues Directly Relevant to the Antitrust Claims Will Result in Duplicative Discovery and Will Not Increase Efficiency for the Parties or the Court.

Fitbit asserts that, because Jawbone must prevail in its defense against Fitbit's meritless patent claims, judicial economy would benefit from a bifurcation and stay of the antitrust claims until the merits of the patent claims are resolved. Jawbone does not dispute that it must (and will) prevail in its defense against the patent claims. But it does not follow that bifurcation and stay would improve efficiency or eliminate issues for trial in the circumstances presented here.

*First*, the discovery relevant to Jawbone's antitrust claim is not substantively distinct from the discovery that will occur in connection with Fitbit's patent infringement claims and Jawbone's defenses against them. Indeed, in pursuing patent issues related to its antitrust claims, Jawbone will seek to establish *more* than would be necessary to defend against Fitbit's patent infringement claims—it will seek to show that Fitbit's patent infringement claims are "objectively baseless," *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60 (1993), and were pursued with the purpose of interfering with Jawbone's ability to compete in the market, *i.e.*, "as an anticompetitive weapon," *Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 380 (1991). To separate this discovery from the discovery necessary for Jawbone to prevail on the infringement claims would require Jawbone to revisit the same or closely-related issues a second time, at significant cost to the parties and loss of

2

efficiency in the judicial process. For example, it is more efficient for Jawbone to conduct discovery into the pre-complaint basis for Fitbit's infringement allegations in conjunction with the patent case itself because some of the same witnesses are likely to be involved. It would be far more efficient to permit these areas of discovery to go forward simultaneously.[1]

*Second*, this is not, as Fitbit suggests, a case where "resolution of one portion of an action would *likely* make it unnecessary to address another portion." Fitbit Mot. at 3 (emphasis supplied). In support of this argument, Fitbit relies on *USS-POSCO Indus. v. Contra Costa County Bldg. & Const. Trades Council, AFL-CIO*, for the proposition that an antitrust claim premised on the filing of a series of lawsuits cannot succeed where "more than half of all of the actions as to which we know the results turn out to have merit." 31 F.3d 800, 811 (9th Cir. 1994). That is manifestly not the case here: Fitbit filed a "series of legal proceedings" in courts on opposite coasts, within weeks of each other, none of which have been shown to have any merit whatsoever. The Ninth Circuit's holding in *Contra Costa* with relevance here is that:

> When dealing with a series of lawsuits, the question is not whether any one of them has merit—some may turn out to, just as a matter of chance—but whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival. The inquiry in such cases is *prospective*: Were the legal filings made, not out of a genuine interest in redressing grievances, but as part of a pattern or practice of successive filings undertaken essentially for purposes of harassment?

*Id.* (emphasis supplied). There is already clear evidence that Fitbit has engaged in such a "pattern or practice of harassment" here. As the Court in the District of Delaware recognized (at the outset) in transferring one of Fitbit's cases to this District, "[w]hat [Fitbit] wants . . . is to have three different cases against [Jawbone's] products moving on different tracks . . . in three different locations . . . ." 12/22/15 Tr. at 20-21, attached hereto as Exhibit 1. The Court questioned the "rationality" of Fitbit's purported strategy of "putting into different buckets of

---

[1] With respect to the two other cases Fitbit filed in District Court -- N.D. Cal. 16-cv-118 and D. Del. 15-cv-990, which is stayed pending a parallel ITC investigation – similar discovery will be necessary and should be obtained at the same time as discovery in the affirmative cases. Fitbit should not be permitted to benefit from its strategy of bringing these cases piecemeal by arguing that the fact that there are multiple litigations pending in front of different judges somehow further weighs in favor of a stay.

3

easy to digest patent issues" (i.e. filing multiple different cases), *id.* at 30:5-9, and noted that he did not hear "any good explanation as to why the litigation has been broadened to include Delaware," *id.* 53:14-15.

Indeed, in arguing for bifurcation, Fitbit does not seriously argue the merits of its patent claims, nor has it moved to dismiss the antitrust claim against it. Rather, Fitbit *admits* that by filing a series of three different district court cases and an ITC investigation it was "defending itself against Jawbone."[2] Fitbit Mot. at 6. The only plausible interpretation of this explanation of Fitbit's affirmative litigation strike against Jawbone -- which it did not pursue as counterclaims or defenses to Jawbone's litigation *or* independently at an earlier date-- is that Fitbit sued Jawbone in retaliation for pursuing claims for patent infringement and theft of trade secrets against Fitbit. Where the "purpose of injuring a market rival" is as blatant as here, the likelihood that resolution of the patent claims will eliminate the need for further adjudication is significantly undercut-- and, with it, the rationale for stay and bifurcation.

Finally, Fitbit argues that if Jawbone's antitrust issues are not bifurcated and stayed there is a risk of inconsistent verdicts "because a determination by any court in which the parties are currently litigating that Jawbone infringed, that Jawbone is not entitled to fees under § 285, or that Fitbit did not misappropriate trade secrets or poach employees would be inconsistent with a determination in this Court that Fitbit violated the antitrust laws." Fitbit Mot. at 7. As an initial matter, the possibility of "inconsistent verdicts" regarding whether Jawbone infringed any of Fitbit's patents, or is entitled to fees is a product of Fitbit's strategic choice to bring three different infringement suits in different courts—indeed, districts on opposite coasts—when it could have brought them in front of one judge. As for the issue of trade secret and employee poaching, these issues will be resolved before the ITC in Jawbone's affirmative case well before any aspect of this case goes to trial, and this Court will be entitled to consider—though will not be

---

[2] Fitbit attempts to paint Jawbone's litigation strategy as similar to its own by noting that Jawbone filed an action in California state court, as well as one in district court, with a parallel action in the ITC. But Jawbone brought all federal claims in a single district court, all state law claims in a state court in the same district—the district where Fitbit and Jawbone are located--and one parallel ITC investigation. This is nothing like Fitbit's series of cases on courts on opposite coasts.

4

bound by—the ITC findings. The trade secret claims in Jawbone's state court action were asserted long before this case was filed and are also on track to be resolved before this case reaches a decision on the merits whether or not there is a stay of discovery here. Thus there is little or no risk of overlapping rulings by different courts.

Moreover, the fact that the parties have already, and will continue to engage in extensive discovery in other litigation on the issues of Fitbit's other patent claims, as well as Jawbone's trade secret and employee poaching allegations provides an additional reason why staying discovery on these issues (when it is already proceeding between the parties) would add little in the way of efficiency.

In sum, the standard rationales for staying discovery and bifurcating antitrust counterclaims in patent litigation are significantly undercut where, as here: (1) the evidence that litigation was filed for the purpose of harassment is clear and effectively uncontested; (2) significant discovery on the issues relevant to the antitrust counterclaim has already occurred between the parties; and (3) as discussed further below, the harm to Jawbone from permitting Fitbit to pursue its retaliatory litigation campaign and postpone any *inquiry* into its attempted monopolization far outweighs any benefit in the way of efficiency or simplification.

### B. Any Efficiency Gained by Stay and Bifurcation is Outweighed by the Harm to Jawbone from Fitbit's Ability to Buttress and Further Amass Market Power

By its own admission, Fitbit already controls over 80% of the market for connected activity trackers.[3] If Fitbit has its way and is permitted to proceed on its current course with no near-term judicial examination of its conduct, competitive entry into that market may soon be, as a practical matter, foreclosed. Indeed, the Ninth Circuit has recognized retaliatory litigation is a "very effective restraint on trade." *Contra Costa*, 31 F.3d at 811. The risk of permanent market distortion is very real because the market for connected activity trackers—those that allow users

---

[3] Fitbit's references to Jawbone's statements from one of the ITC proceedings about the competitive nature of the market are irrelevant here because they relate to a different market. In the ITC case, Jawbone was discussing the market for wearable fitness trackers generally. The antitrust allegations in this case relate to the narrower, and much more concentrated, market for connected (through the Internet) fitness trackers.

to connect with a community of other users through the Internet—has network effects that form a substantial barrier to entry. Users wanting to connect with others will naturally and inevitably be drawn to devices which have the largest networks of other users. Once Fitbit establishes dominance in that group, it will be very difficult for a new-entrant competitor, even one with a better or less expensive product, to attract a meaningful share of the market.

Jawbone raised this antitrust counterclaim as soon as Fitibit's intent to use litigation to harass and restrain Jawbone's ability to compete in the market became apparent—*i.e.* when Fitbit filed this second litigation against Jawbone in a court on the other side of the country from its first-filed case. It could not have been more proactive in pursuit of its claims. *Cf. ASM Am., Inc. v. Genus, Inc.*, 2002 WL 24444, at *6 (N.D. Cal. Jan. 9, 2002) (noting that plaintiff's "allegation of irreparable harm rings somewhat hollow . . . in light of its failure to bring its antitrust claims against ASM independently"). In short, the harm to Jawbone from postponement of its antitrust counterclaim – for which it bears no fault – outweighs any gains in efficiency from postponement.

### C. Even if the Court Decides to Bifurcate the Antitrust Counterclaim it Should Allow Discovery to Proceed

Even if the Court believes that bifurcated trials on the issue of patent infringement and antitrust liability is the most efficient course, it does not follow that discovery on the antitrust issues should be stayed. Courts addressing time-sensitive antitrust claims where there is significant evidentiary overlap between the patent and antitrust issues, have on numerous occasions bifurcated the two issues for trial but permitted discovery on all issues to go proceed. Indeed, the District Court in *In re Innotron Diagnostics* ordered the patent issues severed and tried first before the antitrust issues, but did not stay discovery in the antitrust case. 800 F.2d at 1078. Another District Court recognized that where "[t]here will be overlap in the patent infringement/antitrust evidence . . . [d]enying the stay on discovery will also allow for a quick resolution of the antitrust trial, if it is required, as both parties will already have most of the information required." *Ecrix Corp. v. Exabyte Corp.*, 191 F.R.D. 611, 614 (D. Colo. 2000). *See also Gen. Tel. & Elecs. Labs. Inc. v. Nat'l Video Corp.*, 297 F. Supp. 981, 983 (N.D. Ill. 1968)

(permitting antitrust discovery to proceed where "[t]he matters in the counterclaims do not seem so closely related to the patent claim that they would be determined by its validity nor so distantly related that they should not be tried at the same time.").

Here, if discovery is allowed to proceed on the antitrust issues, many of which have arisen in one or more of the pending actions between the two parties, there is no reason why Jawbone's antitrust counterclaims cannot be tried on a reasonably prompt timeline by this Court.[4]

## II. CONCLUSION

For the foregoing reasons, Jawbone respectfully requests that the Court deny Fitbit's request to bifurcate and stay Jawbone's antitrust claims until the patent claims are resolved and set a schedule, with the input of the parties, for discovery on the antitrust claims. Alternatively, Jawbone respectfully requests that even if the Court grants Fitbit's request to bifurcate the antitrust counterclaim from the trial of the patent infringement claims, that the Court permit discovery on the antitrust claim to proceed, in accordance with a schedule set by the Court with the input of the parties.

---

[4] Certainly, the fact that Jawbone did not insist on setting deadlines for antitrust discovery in the proposed scheduling order pending resolution of this motion is no barrier to orderly discovery proceeding.

| | |
|---|---|
| Dated: March 3, 2016 | **SUSMAN GODFREY L.L.P.**<br>KALPANA SRINIVASAN<br><br>MAX L. TRIBBLE, JR. (*Pro Hac Vice*)<br>mtribble@susmangodfrey.com<br>JOSEPH S. GRINSTEIN (*Pro Hac Vice*)<br>jgrinstein@susmangodfrey.com<br>1000 Louisiana, Suite 5100<br>Houston, Texas  77002-5096<br>[Tel.] (713) 651-9366<br>[Fax] (713) 654-6666<br><br>GENEVIEVE VOSE WALLACE (*Pro Hac Vice*)<br>gwallace@susmangodfrey.com<br>EDGAR G. SARGENT (*Pro Hac Vice*)<br>esargeant@susmangodfrey.com<br>E. LINDSAY CALKINS (*Pro Hac Vice*)<br>lcalkins@susmangodfrey.com<br>1201 Third Avenue, Suite 3800<br>Seattle, Washington 98101-3000<br>[Tel.] (206) 516-3880<br>[Fax] (206) 516-3883<br><br>ELISHA BARRON (*Pro Hac Vice*)<br>ebarron@susmangodfrey.com<br>560 Lexington Avenue, 15th Floor<br>New York, New York 10022-6828<br>[Tel.] (212) 336-8330<br>[Fax] (212) 336-3800<br><br>By:   */s/ Kalpana Srinivasan*<br>          Kalpana Srinivasan<br><br>*Attorneys for Defendants AliphCom and Bodymedia, Inc.* |