Kalpana Srinivasan (237460)
ksrinivasan@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorney for Defendants AliphCom, Inc. and BodyMedia, Inc.*
(Additional Counsel for Defendants listed below signature line)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FITBIT, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>ALIPHCOM, INC. d/b/a JAWBONE and BODYMEDIA, INC.,<br><br>Defendants. | Case No. 5:15-cv-04073-EJD<br><br>**DEFENDANTS ALIPHCOM, INC. d/b/a JAWBONE AND BODY MEDIA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>Date:           October 27, 2016<br>Time:           9 a.m.<br>Courtroom:  4<br>Judge:         Hon. Edward J. Davila |

## <u>NOTICE OF MOTION</u>

PLEASE TAKE NOTICE that on October 27, 2016, at 9:00 AM, or as soon thereafter as this matter may be heard before Judge Edward J. Davila, in Courtroom 4, 5th Floor, United States Courthouse, 280 South 1st St., San Jose, California, Defendants AliphCom, Inc. d/b/a Jawbone and Bodymedia, Inc. ("Jawbone" or "Defendants") will, and hereby do, move the Court to grant Jawbone's Motion for Summary Judgment on the Ground of Non-Infringement as to the Asserted Patents.

Dated: June 14, 2016

SUSMAN GODFREY L.L.P.
KALPANA SRINIVASAN
ksrinivasan@susmangodfrey.com
1901 Avenue of the Stars
Los Angeles, California 90067-6029
[Tel.] (310) 789-3100
[Fax] (310) 789-3150

MAX L. TRIBBLE, JR. (Pro Hac Vice)
mtribble@susmangodfrey.com
JOSEPH S. GRINSTEIN (Pro Hac Vice)
jgrinstein@susmangodfrey.com
1000 Louisiana, Suite 5100
Houston, Texas  77002-5096
[Tel.] (713) 651-9366
[Fax] (713) 654-6666

GENEVIEVE VOSE WALLACE (Pro Hac Vice)
gwallace@susmangodfrey.com
EDGAR G. SARGENT (Pro Hac Vice)
esargent@susmangodfrey.com
E. LINDSAY CALKINS (Pro Hac Vice)
lcalkins@susmangodfrey.com
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
[Tel.] (206) 516-3880
[Fax] (206) 516-3883

ELISHA BARRON (Pro Hac Vice)
ebarron@susmangodfrey.com
560 Lexington Avenue, 15th Floor
New York, New York 10022-6828
[Tel.] (212) 336-8330
[Fax] (212) 336-3800

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IAN B. CROSBY (Pro Hac Vice)
icrosby@susmangodfrey.com
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
[Tel.] (206) 516-3880
[Fax] (206) 516-3883


*/s/ Kalpana Srinivasan*
Kalpana Srinivasan
*Attorneys for Defendants AliphCom d/b/a Jawbone*
*and BodyMedia, Inc.*

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................... 2

        A.      The '923 Patent ......................................................................................... 3

        B.      The '053 Patent ......................................................................................... 3

        C.      The '307 Patent ......................................................................................... 5

        D.      The Accused UP Products ......................................................................... 7

III.    LEGAL STANDARD ........................................................................................... 8

IV.     ARGUMENT ........................................................................................................ 9

        A.      Establishing Infringement Requires That the Accused Devices Contain
                Each and Every Limitation of the Asserted Claims. .................................. 9

        B.      The Language "Cueing the User to Validate the Request to Pair" Can
                Be Given Plain and Ordinary Meaning .................................................... 10

        C.      Uncontroverted Evidence Establishes That the Accused Products Lack
                an Essential Limitation of the Asserted Claims of Each of the Three
                Asserted Patents and Therefore Do Not Infringe. .................................... 10

        D.      Fitbit Has Not Asserted Infringement of the "Cueing" Element Under
                the Doctrine of Equivalents and, In Any Event, the Accused Products
                Lack Any Component That Performs "Substantially the Same"
                Function as the Claimed Limitation. ........................................................ 14

V.      CONCLUSION .................................................................................................... 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Abbott Labs. v. Sandoz, Inc.*,

4

    566 F.3d 1282 (Fed. Cir. 2009)...................................................................... 11

5

*Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*,

    808 F.3d 1313 (Fed. Cir. 2015)..................................................................... 11

6

*Amhil Enterprises Ltd. v. Wawa, Inc.*,

7

    81 F.3d 1554 (Fed. Cir. 1996).................................................................. 11, 15

8

*Anderson v. Liberty Lobby, Inc.*,

9

    477 U.S. 242 (1986)...................................................................................... 10

10

*Bayer AG v. Elan Pharm. Research Corp.*,

    212 F.3d 1241 (Fed. Cir. 2000)..................................................................... 11

11

*Celotex Corp. v. Catrett*,

12

    477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)................................. 10

13

*Crown Operations Int'l, Ltd. v. Solutia Inc.*,

14

    289 F.3d 1367 (Fed. Cir. 2002)..................................................................... 10

15

*Ericsson, Inc. v. D-Link Sys., Inc.*,

    773 F.3d 1201 (Fed. Cir. 2014)..................................................................... 11

16

*Koito Mfg. Co. v. Turn-Key-Tech, LLC,*

17

    381 F.3d 1142, 1152 n. 4 (Fed. Cir. 2004).................................................... 14

18

*Kraft Foods, Inc. v. Int'l Trading Co.*,

19

    203 F.3d 1362 (Fed. Cir. 2000)..................................................................... 16

20

*MicroStrategy Inc. v. Bus. Objects, S.A.*,

    429 F.3d 1344 (Fed. Cir. 2005)..................................................................... 11

21

*Novartis Corp. v. Ben Venue Labs., Inc.*,

22

    271 F.3d 1043 (Fed. Cir. 2001)..................................................................... 10

23

*Seal-Flex, Inc. v. Athletic Track & Court Constr.*,

    172 F.3d 836 (Fed. Cir. 1999)....................................................................... 11

24

25

*TechSearch, L.L.C. v. Intel Corp.*,

    286 F.3d 1360 (Fed. Cir. 2002)..................................................................... 10

26

*VirnetX, Inc. v. Cisco Sys., Inc.*,

27

    767 F.3d 1308 (Fed. Cir. 2014)..................................................................... 11

28

**Statutes**

28 U.S.C. § 1659 ................................................................................................................. 3

35 U.S.C. § 271 ................................................................................................................... 3

**Rules**

Fed.R.Civ.P. 56(c) ............................................................................................................ 10

1    **I.    INTRODUCTION**

2         It is undisputed that each of the asserted claims in each of the three patents that Fitbit, Inc.

3    ("Fitbit") contends are infringed by Aliphcom d/b/a Jawbone and Bodymedia, Inc.'s ("Jawbone")

4    line of wearable activity devices requires the element of the wearable device "cueing" the user to

5    validate a request to pair the wearable device with the user's mobile device.  Fitbit has asserted

6    that the UP2, UP3, and UP4 (together, the "Accused Products" or the "UP Products") satisfy this

7    limitation in each of the claims because when the user's mobile device sends a command to pair

8    to the UP Product through Bluetooth protocol, the UP Product, in turn, sends a signal or "cue" to

9    the user – specifically by vibrating or flashing LED lights – to validate the request to pair the

10   wearable device and the mobile device.

11        It is also undisputed that if the Accused Products do not perform this element of each

12   asserted claim, then Fitbit cannot prevail on its claim for infringement.  The only theoretical

13   dispute is whether the Accused Products, in fact, perform this element.  All material evidence

14   shows that they do not: A cursory examination (whether by a lay person or a person

15   knowledgeable in the art) of how the Accused Products undergo the process of pairing

16   immediately reveals that no "cue" is presented by the UP Product to the user to validate the

17   request to pair – no vibration, flashing lights or other "cues" occur on the wearable device

18   between the time when the mobile device sends the request to pair to the UP Product and the time

19   when the user validates the request to pair by "touching and holding" the wearable device, only

20   after which the UP Product vibrates to indicate that pairing has been completed.  The only

21   indication that the user receives to validate the pairing comes from the UP App – which is not an

22   accused product in this case – that is operated on the user's mobile device and, after the mobile

23   device detects the UP Product, instructs the user to "touch and hold to pair."  None of the

24   technical documents about the Accused Products suggest (much less establish) that "cueing"

25   occurs to direct the user to validate the request to pair.  In the face of this overwhelming and

26   uncontroverted evidence, and without assuming any specialized construction of the claims, no

27   testimony, whether lay or expert, can create a disputed issue of fact.  Thus, Defendants

28   respectfully submit that summary judgment on the ground of non-infringement as to all three

1   asserted patents should be granted.

2   **II.    BACKGROUND**

3       Fitbit and Jawbone design, market, and sell wearable devices that track sleep, activity, and

4   other health and fitness data ("wearable activity devices").   Joint Statement of Undisputed Facts

5   ("JSUF") ¶ 1.  This case is the second of three cases Fitbit filed against Jawbone, in district courts

6   on opposite coasts, alleging patent infringement in violation of 35 U.S.C. § 271.[1]  In this action,

7   Fitbit alleges infringement of three patents: (1) U.S. Patent No. 9,048,923 (the "'923 patent"); (2)

8   U.S. Patent No. 9,026,053 (the "'053 patent"); and (3) U.S. Patent No. 9,106,307 (the "'307

9   patent"), all of which are entitled "System and Method for Wireless Device Pairing."  *Id.* ¶ 4.

10      Fitbit served its Infringement Contentions, attached as Exhibit 1, on February 25, 2016.

11  Jawbone served Invalidity Contentions on April 21, 2016 and, in connection with the service of

12  Invalidity Contentions, produced technical documents sufficient to show the operation of the

13  Accused Products.  *See* Invalidity Contentions at 12-13, attached as Exhibit 2.  Fitbit has not

14  sought to supplement their infringement contentions in light of Jawbone's technical production or

15  requested to inspect any source code.  On May 26, 2016 the parties exchanged identified terms

16  for construction and proposed constructions for those terms, along with extrinsic evidence.  Fitbit

17  did not identify any of the "cueing" terms for construction, and proposed plain meaning in

18  response to Jawbone's identification of those terms for construction.  *See* JSUF ¶¶ 19, 38, 67, 68;

19  *see also* Fitbit's Preliminary Claim Construction at 5, attached as Exhibit 3.  Fitbit has asserted

20  that it "does not believe that expert witness testimony is required for construction of these terms."

21  *Id.* at 6.  Jawbone agrees that no expert witness testimony is required for construction of the

22  "cueing" terms.

23

---

24  [1] On September 3, 2015, Fitbit filed a suit in the District of Delaware alleging infringement of
    three other patents based on the same Accused Products. That case has been transferred to this
25  District (N.D. Cal. 5:16 Civ. 118).  This case was filed on September 8, 2015.  On October 29,
    2015, Fitbit filed a second case in the District of Delaware, alleging infringement of three
26  additional patents based on the same Accused Products, which it designated as related to the first-
    filed case.  That case has been mandatorily stayed pursuant to 28 U.S.C. § 1659 based on a
27  parallel investigation instituted by Fitbit in the International Trade Commission ("ITC") on
    November 2, 2015 (Investigation No. 337-TA-937).  Jawbone has filed a motion for a
28  discretionary stay of N.D. Cal. 5:16 Civ. 118 pursuant to 28 U.S.C. § 1659 based on the fact that
    the patents in that case are closely related to the patents at issue in the ITC Action.

A.      **The '923 Patent**

Fitbit asserts that the Accused Products infringe Claims 1, 2, 7-10, and 13 of the '923 patent.  JSUF ¶ 5.  Independent Claim 1 of the '923 patent contains the elements of "the first device sending a command to the second device to enter pairing mode;" "the second device cueing the user via the user interface to validate a request to pair;" "wherein input comprises tapping only the second device anywhere on its exterior;" and "the second device detecting the tapping using a motion sensor."  *Id.* ¶ 6.  Fitbit has taken the position that no construction is necessary for the phrase "the second device cueing the user via the user interface to validate a request to pair" because "[t]he phrase is amenable to its plain and ordinary meaning."  *Id.* ¶ 19.

Dependent Claim 2 adds the limitation that the "user response to the cue is detectable by the motion sensor."  *Id.* ¶ 7.  Dependent Claim 10 adds the limitation that the "cueing comprises causing the device to perform at least one of vibrating, illuminating, making a sound, and displaying a message."  *Id.* ¶ 8.

Fitbit contends that all three Accused Products satisfy the limitation of Claim 1 of the '923 patent of  "the first device sending a command to the second device to enter pairing mode" by "the mobile device send[ing] a command through Bluetooth protocol to the [Accused Product] to enter pairing mode."  *Id.* ¶¶ 10, 13, 16.  According to Fitbit's contentions, the first device is the mobile device and the second device is the Accused Product.

Fitbit contends that the Accused Products satisfy the limitation of Claim 1 of the '923 patent reciting "the second device cueing the user via the user interface to validate a request to pair" because "the [Accused Product] will vibrate and flash its LED lights to cue the user to validate request to pair."  *Id.* ¶¶ 11, 14, 17.  Fitbit asserts that each of the Accused Products has a "user interface" in the form of "three single color LEDs on its surface as well as a vibration motor (a "vibramotor").  *Ids.*

B.      **The '053 Patent**

Fitbit asserts that that the Accused Products infringe Claims 1, 2 and 5-9 of the '053 patent.  JSUF ¶ 20.  Independent Claim 1 of the '053 patent contains the elements of "the second device sending a command to the first biometric device to enter pairing mode;" "the first portable

1  biometric device generating a cue to the first portable biometric device user requesting the first

2  portable biometric device user to validate the pairing between the first portable biometric device

3  and the second device;" and "the first portable biometric device receiving input from the user

4  indicating the user's agreement to validate the pairing request, wherein input comprises tapping

5  only the first biometric device one or more times anywhere on its exterior." *Id.* ¶ 21. Fitbit has

6  taken the position that no construction is necessary for the phrase "the first portable biometric

7  device generating a cue to the first portable biometric device user requesting the first portable

8  biometric device user to validate the pairing" because "[t]he phrase is amenable to its plain and

9  ordinary meaning." *Id.* ¶ 38.

10       Dependent Claim 5 adds the limitation that "the cue comprises the first portable biometric

11  device prompting the user through a first portable biometric device user interface to respond to

12  the cue." *Id.*¶ 23. Dependent Claim 7 adds the limitation that "the cue comprises one or more of

13  the first portable biometric device vibrating, and illuminating the LEDs." *Id.* ¶ 24.

14       Fitbit contends that each of the Accused Products is a "portable biometric device" and that

15  the user's mobile device is the "second device." *Id.* ¶ 25. Fitbit contends that the Accused

16  Products satisfy the limitation of Claim 1 of the '053 patent of "the second device sending a

17  command to the first biometric device to enter pairing mode" by "the mobile device send[ing] a

18  command through Bluetooth protocol to the Jawbone [Accused Product] to enter pairing mode"

19  *Id.* ¶¶ 26, 30, 34.

20       Fitbit contends that the Accused Products satisfy the limitation of Claim 1 of the '053

21  patent reciting "the first portable biometric user device generating a cue to the first portable

22  biometric device user requesting the first portable biometric device user to validate the pairing

23  between the first portable biometric device and the second device" because "in response to the

24  signal from the mobile phone, the Jawbone UP2 will vibrate and flash its LED lights to cue the

25  user to validate the pairing of the device." *Id.* ¶¶ 27, 31, 35.

26       Fitbit contends that the Accused Products satisfy the limitation of Claim 5 of the '053

27  "wherein the cue comprises the first portable biometric device prompting the user through a first

28  portable biometric device user interface to respond to the cue" because "the [Accused Product]

will vibrate and flash its LED lights to cue the user to validate the pairing." *Id.* ¶¶ 28, 32, 36.

Fitbit contends that Accused Products satisfy the limitation of Claim 7 of the '053 patent "wherein the cue comprises one or more of the first portable biometric device vibrating, and illuminating the LEDs" because "the [Accused Product] will vibrate and flash its LED lights to cue the user to validate the pairing." *Id.* ¶¶ 29, 33, 37.

**C.   The '307 Patent**

Fitbit asserts that Jawbone infringes Claims 1-3, 5-10, 14, and 16-19 of the '307 patent. JSUF ¶ 39.  Independent Claim 1 of the '307 patent contains the elements of "the other device sending a command to the portable monitoring device to enter pairing mode," "the portable monitoring device cueing the user via the user interface to validate the request to pair;" "wherein input comprises tapping the device on any part of its exterior," and "detecting the tapping with one of the motion sensors." *Id.* ¶ 40.  Fitbit has taken the position that no construction is necessary for the phrase "the at least one sensor device cueing the user to validate the request to pair" because "[t]he phrase is amenable to its plain and ordinary meaning." *Id.* ¶ 64.

Independent Claim 5 of the '307 patent contains the elements of "when the at least one sensor device is on the list of detected devices, the at least one client device sending a command to the at least one sensor device to enter pairing mode;" "the at least one sensor device cueing the user to validate the request to pair;" and "wherein input comprises tapping the at least one sensor device on any part of its exterior." *Id.* ¶ 41.

Dependent Claim 7 adds the limitation "wherein cuing the user comprises one or more of: vibrating the at least one sensor device; displaying a message on the touch screen; and playing an audio message."[2]  *Id.* ¶ 42.  Dependent Claim 8 adds the limitation "wherein the tapping is detected by the motion sensor." *Id.* ¶ 43.  Dependent Claim 14 adds the limitation of "the at least one client device causing the at least one sensor device to indicate to the user that the at least one client device wants to initiate pairing the at least one client device with the at least on sensor

---

[2] Claims 7 and 8 are dependent on Claim 6, which discloses "the system of claim 5, wherein the at least one sensor device further comprises at least one of, a speaker; a vibramotor; motion sensors; gesture recognition sensors; a touch screen; a microphone; and buttons.

1    device."[3]  *Id.* ¶ 44.

2         Independent Claim 16 of the '307 patent contains the element of "a personal monitoring

3    device comprising … a user interface for communicating with the user, wherein communicating

4    comprises indicating to the user that the personal monitoring device has been requested by the

5    client device to pair with the client device as part of a pairing process."  *Id.* ¶ 45.

6         Fitbit contends that the Accused Products satisfy the limitation of Claim 1 of the '307

7    patent of "the other device sending a command to the portable monitoring device to enter pairing

8    mode" by "the mobile device send[ing] a command through Bluetooth protocol to the Jawbone

9    [Accused Product] to enter pairing mode" *Id.* ¶¶ 46, 53, 60.

10        Fitbit contends that the Accused Products satisfy the limitation of Claim 1 of the '307

11   patent reciting "the first portable monitoring device cueing the user via the user interface to

12   validate the request to pair" because "the [Accused Product] will vibrate and flash its LED lights

13   to cue the user to validate a request to pair." *Id.* ¶¶ 47, 54, 61.

14        Fitbit contends that the Accused Products satisfy the limitation of Claim 5 of the '307

15   patent of "the at least one client device sending a command to the at least one sensor device to

16   enter pairing mode" by "the mobile device send[ing] a command through Bluetooth protocol to

17   the [Accused Product] to enter pairing mode." *Id.* ¶¶ 48, 55, 62.

18        Fitbit contends that the Accused Products satisfy the limitation of Claim 5 of the '307

19   patent reciting "the at least one sensor device cueing the user to validate the request to pair"

20   because "the [Accused Product] will vibrate and flash its LED lights to cue the user to validate a

21   request to pair." *Id.* ¶¶ 49, 56, 63.

22        Fitbit contends that the Accused Products satisfy the limitation of Claim 7 "wherein cuing

23   the user comprises one or more of: vibrating the at least one sensor device; displaying a message

24   on the touch screen; and playing an audio message" because "the [Accused Product] will vibrate

25   and flash its LED lights to cue the user to validate a request to pair." *Id.* ¶¶ 50, 57, 64.

26        Fitbit contends that the Accused Products satisfy the limitation of Claim 14 reciting "the

27   at least one client device causing the at least one sensor device to indicate to the user that the at

28

---

[3] Claim 14 is dependent on Claim 5.

least one client device wants to initiate pairing the at least one client device with the at least on[e] sensor device" because "the mobile device sends a signal to the [Accused Product] causing it to vibrate and flash its LED lights to cue the user to validate the pairing of the device with the mobile device." *Id.* ¶¶ 51, 58, 65.

Fitbit contends that the Accused Products satisfy the limitation of Claim 16 of "a personal monitoring device comprising … a user interface for communicating with the user, wherein communicating comprises indicating to the user that the personal monitoring device has been requested by the client device to pair with the client device as part of a pairing process" because the Accused Product "will vibrate and flash its LED lights to cue the user to validate the pairing process" and that this "cueing takes place in response to a pairing request signal from the mobile device." *Id.* ¶¶ 52, 59, 66.

### D.    The Accused UP Products

The Accused Products – the UP2, UP3 and UP4– are wearable activity devices that are generally operated in conjunction with the UP App – a mobile application that the user downloads onto her mobile device, which can then display data from the wearable activity device on the mobile device.  The UP App is not identified as an accused instrumentality of the asserted claims in Fitbit's Infringement Contentions or any of the exhibits thereto.

The "pairing process" occurs only once – when the user first initiates a connection between the UP App and the UP device. After the initial "pairing" the UP App automatically "syncs" with the UP Device when the user opens the UP App.   *See*, *e.g.*, Infringement Contentions, Ex. 7 at 6, attached as <u>Exhibit 4</u>; Ex. 8 at 6, attached as <u>Exhibit 5</u>; Ex. 9 at 7, attached as <u>Exhibit 6</u> ("Your data will automatically sync with the app once the band has connected.")    (citing       Jawbone       Support,       available       at <u>https://jawbone.com/support/articles/000009349/Syncing-Your-Band</u>).   The data from the UP Product "syncs every minute the app is open, when your band is connected and within 33 feet of your phone or tablet. When the app is running in the background, your data syncs every 20 minutes. Once syncing is complete, you can immediately review your latest progress in the app's feed." *See*, *e.g.*, Infringement Contentions, Ex. 7 at 8 (<u>Ex. 4</u>); Ex. 8 at 8 (<u>Ex. 5</u>) Ex. 6 (<u>Ex. 8</u>) at 11

1   (citing Jawbone Support, available at https://jawbone.com/support/articles/000009349/Syncing-
2   Your-Band). [4]

3          The initial pairing process operates as follows: the user downloads the UP App on the
4   mobile device, and opens the UP App.  If the UP Product is on the UP App's list of eligible
5   devices, the UP App displays a message to the user to "Touch and Hold to Pair" and, specifically,
6   to "[t]ouch and hold the band surface until it vibrates."  JSUF ¶ 68-70.  The only signal the user
7   receives to validate the pairing of the UP Product and the mobile device comes from the UP App.
8   No vibration or display of lights occurs on the UP *Product* until *after* the user has completed the
9   step of touching and holding the band.  *See* YOUTUBE Video of UP3 Pairing Process, attached
10  as Exhibit 10; *see also* Declaration of Kevin Almeroth.  As set forth in detail below, the only
11  signal or "cue" the user receives to validate or complete the pairing process is the message on the
12  UP *App* directing the user to "Touch and Hold to Pair."

13  **III.      LEGAL STANDARD**

14         Summary judgment is appropriate when no genuine of issues of material fact exist, and
15  the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett,* 477 U.S.
16  317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c).  The movant bears the
17  burden of showing there is no genuine issue of material fact.  *See Celotex,* 477 U.S. at 322.
18  "Issues of fact are genuine only 'if the evidence is such that a reasonable [fact finder] could return
19  a verdict for the nonmoving party.'"  *Crown Operations Int'l, Ltd. v. Solutia Inc.*, 289 F.3d 1367,
20  1375 (Fed. Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

21         Fitbit bears the burden of proving Jawbone's products infringe the asserted patents.  *See*
22  *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).  Where the
23  patentee fails to provide sufficient proof of all the essential elements of infringement, summary
24  judgment of non-infringement is appropriate "because such failure will render all other facts
25  immaterial."  *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002).

26         A defendant moving for summary judgment on the ground of non-infringement may meet
27  its burden of showing no disputed material fact *either* by "providing evidence that would preclude

28  ───────────────────────
[4] The Exhibits cited to are the charts for the '307 patent.  However, the charts for the '923 and
'053 patents contain the same citations and statements.

a finding of infringement, *or* by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Id.* (emphasis supplied). Summary judgment on the question of infringement "may . . . properly be decided as a matter of law when no genuine issue of material fact exists and no expert testimony is required to explain the nature of the patented invention or the accused product or to assist in their comparison." *Amhil Enterprises Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1557-58 (Fed. Cir. 1996).

## IV.    ARGUMENT

### A.    Establishing Infringement Requires That the Accused Devices Contain Each and Every Limitation of the Asserted Claims.

The infringement inquiry involves two steps: "construing the claims and comparing the properly construed claims to the accused product." *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1316-17 (Fed. Cir. 2015) (citing Abbott Labs. v. Sandoz, Inc., 566 F.3d 1282, 1288 (Fed. Cir. 2009)). To carry its burden, Fitbit must provide evidence showing that the accused device contains, "literally or under the doctrine of equivalents, every limitation of the properly construed claim." *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *see also Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1215 (Fed. Cir. 2014) (stating that patentee "must show that the accused device contains each and every limitation of the asserted claims" (emphasis in original)). If the patentee cannot show literal infringement, the doctrine of equivalents requires that the differences between the claim limitation and the accused product be insubstantial. *See VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1322 (Fed. Cir. 2014). "Insubstantiality may be determined by whether the accused device performs substantially the same function in substantially the same way to obtain substantially the same result as the claim limitation." Id. If even a single claim limitation is not shown to be present in the accused device by sufficient evidence, there can be no infringement as a matter of law, and summary determination is appropriate. *See MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1352-53 (Fed. Cir. 2005); *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1248 (Fed. Cir. 2000).

**B.** **The Language "Cueing the User to Validate the Request to Pair" Can Be Given Plain and Ordinary Meaning**

Each of the asserted claims of the '923, '053, and '307 patents contains some version of the limitation of "the [wearable activity device] cueing the user via the user interface to validate a request to pair."  Fitbit contends that this limitation is satisfied because "the [Accused Product] will vibrate and flash its LED lights to cue the user to validate request to pair."  JSUF ¶¶ 11, 14, 17.  Fitbit has taken the position, and Jawbone agrees for purposes of this motion, that "no construction is necessary for the phrase 'the [wearable activity device] cueing the user via the user interface to validate a request to pair'" because "[t]he phrase is amenable to its plain and ordinary meaning." *Id.* ¶ 19.  *See also id.* ¶¶ 38, 64.  For purposes of this motion, Jawbone agrees that this limitation could be satisfied by the UP Product flashing LED lights or vibrating in response to the mobile device communicating a request to pair with the UP Product through Bluetooth protocol.

**C.** **Uncontroverted Evidence Establishes That the Accused Products Lack an Essential Limitation of the Asserted Claims of Each of the Three Asserted Patents and Therefore Do Not Infringe.**

It is apparent from a superficial (or in depth) review of how the UP2, UP3, and UP4 undergo the process of connecting with the user's mobile device – as well as Jawbone's support website, documents disclosed in Fitbit's Infringement Contentions, and the technical documents produced with Jawbone's invalidity contentions – that the "cueing" limitation disclosed in the asserted claims of all three patents is not present in any of the three Accused Products (the UP2, UP3 and UP4).

Jawbone's website support on pairing the UP2, UP3, and UP4 trackers with a mobile device instruct users that "[w]hen the [UP] [A]pp locates your tracker, you'll be prompted to touch and hold the band's surface until it vibrates. The vibration indicates your tracker has paired with the UP App."   https://jawbone.com/support/articles/000007054/setup-up2, attached as Exhibit 7;  https://jawbone.com/support/articles/000007053/setup-up3, attached as Exhibit 8; https://jawbone.com/support/articles/000007209/setup-up4, attached as Exhibit 9.   Consistent

1   with these instructions, and as demonstrated below,[5] the "prompt[ing] to touch and hold the

2   band's surface" does not occur on the Accused Product – rather, the only "prompt" to the user is a

3   message on the UP *App* that directs the user to "Touch and Hold to Pair."



First, the mobile device attempts to detect the UP Product through Bluetooth protocol.



5   The screenshots are taken from the video attached as <u>Exhibit 10</u>   and discussed in the
    Declaration of Kevin Almeroth.  As set forth in the Almeroth Declaration, although the video

Once the mobile device has located the UP Product and it is time for the user to validate the request to pair, nothing happens on the UP Product itself.



Rather, the UP *App* instructs the user to validate the pairing with an instruction, displayed on the user's mobile device, to "touch and hold to pair."



---

(… cont'd)

shows the pairing of the UP3, the process does not differ from the process for pairing the UP2 and UP4.  *See* Almeroth Decl. ¶ 6.

1   At that point, the user must touch and hold the UP Product. Only then does the UP Product

2   vibrate, indicating that the pairing is complete.



15       As set forth in the images above (taken from the video attached as <u>Exhibit 10</u>), between

16   the time when the mobile device detects the UP Product and the time when the user completes the

17   instruction from the *UP App* to "touch and hold to pair," there is no "cue" from the wearable

18   device – no vibrating, no flashing of LED lights, nor any other indication from the wearable

19   device that could be construed as substantially similar to the "cueing" disclosed in the asserted

20   claims of patents '923, '053, and '307.

21       Fitbit—despite having access to the Accused Products and the UP App, which readily

22   reveal how the pairing process works— has identified no evidence in support of its contention

23   that "the [Accused Product] will vibrate and flash its LED lights to cue the user to validate

24   request to pair."   In contrast, the evidence that this essential limitation of the asserted claims is

25   lacking is overwhelming.  No testimony is necessary to bolster or conclusively establish that that

26   no "cueing" on the wearable device occurs.  Nor would any testimony – whether lay or expert –

27   be sufficient to controvert the objective evidence that this element is absent from the Accused

28   Products. *See Amhil Enterprises*, 81 F.3d at 1557-58 (Summary judgment of non-infringement

"may . . . properly be decided as a matter of law when no genuine issue of material fact exists and

1   no expert testimony is required to explain the nature of the patented invention or the accused

2   product or to assist in their comparison."); *see also Koito Mfg. Co. v. Turn-Key-Tech, LLC,* 381

3   F.3d 1142, 1152 n. 4 (Fed. Cir. 2004) (stating that summary judgment without expert testimony is

4   appropriate where "patent[s] were 'easily understandable'").  Nor is any further discovery

5   necessary: to the extent that any technical documents could controvert the facts about the UP

6   Products that are clear on the face of the products, Jawbone has produced all relevant technical

7   documents with its Invalidity Contentions.  *See* Invalidity Contentions, <u>Exhibit 2</u> at 12-13.  These

8   documents, like the other evidence, simply confirm what is apparent from the operation of the UP

9   Products – the absence of the "cueing" limitation.

10

11          **D.      <u>Fitbit Has Not Asserted Infringement of the "Cueing" Element Under the
             Doctrine of Equivalents and, In Any Event, the Accused Products Lack Any
12           Component That Performs "Substantially the Same" Function as the Claimed
             Limitation.</u>**

13          Fitbit has not asserted in its Infringement Contentions that the Accused Products satisfy

14   the "cueing" limitations under the doctrine of equivalents, much less articulated how the Accused

15   Products would meet the standard of "substantial" similarity with regard to this limitation, and

16   therefore under Local Patent Rule 3-1(e) may not raise the doctrine of equivalents to avoid

17   summary judgment of non-infringement.  Even if Fitbit could raise an equivalence theory at this

18   point, there is no evidence that any operation of the UP Products performs substantially the same

19   function as the limitation of "cueing the user via the user interface to validate a request to pair,"

20   because the only notification those devices provide to the user in connection with pairing occurs

21   after the paring process is already complete. *See Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d

22   1362, 1371 (Fed. Cir. 2000) ("Equivalence is shown by evidence that the accused device contains

23   an element that is not substantially different from any claim element that is literally lacking, . . .

24   or that the claimed limitation and the accused component perform substantially the same function

25   in substantially the same way to achieve substantially the same result.") (quotations and

26   alterations omitted).  Accordingly, even if Fitbit could claim that this limitation is established

27   under the doctrine of equivalents, summary judgment would also be appropriate on that basis.

28

1  **V.     CONCLUSION**

2         For the foregoing reasons, Jawbone submits that it would be a waste of the resources of

3  the Court and the parties to continue discovery into Fitbit's infringement claims as to U.S. Patent

4  Nos. 9,048,923, 9,026,053 and 9,106,307 because it is indisputable, based on all relevant

5  evidence, that the Accused Products do not perform, literally or under the doctrine of equivalents,

6  a limitation of each of the asserted claims.  Accordingly, Jawbone respectfully requests that the

7  Court grant summary judgment of non-infringement and dismiss all claims.

8

9  Respectfully submitted,

10 Dated: June 14, 2016

11                                          SUSMAN GODFREY L.L.P.
                                            KALPANA SRINIVASAN
12                                          ksrinivasan@susmangodfrey.com
                                            1901 Avenue of the Stars
13                                          Los Angeles, California 90067-6029
                                            [Tel.] (310) 789-3100
14                                          [Fax] (310) 789-3150

15                                          MAX L. TRIBBLE, JR. (Pro Hac Vice)
16                                          mtribble@susmangodfrey.com
                                            JOSEPH S. GRINSTEIN (Pro Hac Vice)
17                                          jgrinstein@susmangodfrey.com
                                            1000 Louisiana, Suite 5100
18                                          Houston, Texas  77002-5096
                                            [Tel.] (713) 651-9366
19                                          [Fax] (713) 654-6666

20                                          GENEVIEVE VOSE WALLACE (Pro Hac Vice)
21                                          gwallace@susmangodfrey.com
                                            EDGAR G. SARGENT (Pro Hac Vice)
22                                          esargent@susmangodfrey.com
                                            E. LINDSAY CALKINS (Pro Hac Vice)
23                                          lcalkins@susmangodfrey.com
                                            1201 Third Avenue, Suite 3800
24                                          Seattle, Washington 98101-3000
                                            [Tel.] (206) 516-3880
25                                          [Fax] (206) 516-3883

26
27                                          ELISHA BARRON (Pro Hac Vice)
                                            ebarron@susmangodfrey.com
28                                          560 Lexington Avenue, 15th Floor
                                            New York, New York 10022-6828

1    [Tel.] (212) 336-8330
     [Fax] (212) 336-3800
2
3    IAN B. CROSBY (Pro Hac Vice)
     icrosby@susmangodfrey.com
4    1201 Third Avenue, Suite 3800
     Seattle, Washington 98101-3000
5    [Tel.] (206) 516-3880
     [Fax] (206) 516-3883
6
7     */s/ Kalpana Srinivasan*
     Kalpana Srinivasan
8    *Attorneys for Defendants AliphCom d/b/a Jawbone*
     *and BodyMedia, Inc.*
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28