GIBSON, DUNN & CRUTCHER LLP
Josh A. Krevitt (SBN 208552)
jkrevitt@gibsondunn.com
200 Park Avenue, 47th Floor
New York, New York 10166
Tel:  (212) 351-4000
Fax:  (212) 351-4035

*Attorney for Plaintiff Fitbit, Inc.*

(Additional Counsel for Plaintiff
listed below signature line)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FITBIT, INC., <br><br> Plaintiff, <br><br> v. <br><br> ALIPHCOM D/B/A JAWBONE and BODYMEDIA, INC., <br><br> Defendants. | Case No. 5:15-CV-4073-EJD <br><br> **PLAINTIFF FITBIT, INC.'S MOTION FOR SANCTIONS** <br><br> DATE:          OCTOBER 27, 2016 <br> TIME:           9 A.M. <br> COURTROOM:  4 <br> JUDGE:         HON. EDWARD J. DAVILA |

**TO THIS COURT, ALL PARTIES AND TO THEIR ATTORNEYS:**

Please take notice that plaintiff Fitbit, Inc. ("Fitbit") moves this Court for an Order awarding $48,555.22 in costs and fees incurred in opposing Jawbone's Motion for Summary Judgment of Non-infringement, now withdrawn. Fitbit's motion is filed concurrently herewith and is currently noticed for hearing on October 27, 2016. The Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and Declaration of Frederick S. Chung, all cited authorities, and all pleadings and papers on file in this action. A Proposed Order is included.

Date:   August 8, 2016

GIBSON, DUNN & CRUTCHER LLP

By:   /s/   *Frederick S. Chung*
          Frederick S. Chung

JOSH A. KREVITT (SBN 208552)
jkrevitt@gibsondunn.com
200 Park Avenue, 47th Floor
New York, NY 10166
Tel:  (212) 351-4000
Fax:  (212) 351-4035

WAYNE M. BARSKY (SBN 116731)
wbarsky@gibsondunn.com
JASON C. LO (SBN 219030)
jlo@gibsondunn.com
2029 Century Park East
Los Angeles, CA 90067-3026
Tel:  (310) 552-8500
Fax:  (310) 551-8741

MARK N. REITER
*(Admitted Pro Hac Vice Admission)*
mreiter@gibsondunn.com
2100 McKinney Avenue
Dallas, TX 75201-6912
Tel:  (214) 698-3100
Fax:  (214) 571-2900

FREDERICK S. CHUNG
fchung@gibsondunn.com
Y. ERNEST HSIN (SBN 201668)
ehsin@gibsondunn.com
NEEMA JALALI (SBN 245424)
njalali@gibsondunn.com
1881 Page Mill Road
Palo Alto, CA 94304
Tel:  (650) 849-5300
Fax:  (650) 849-5333

*Attorneys for Plaintiff Fitbit, Inc.*

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1

II. LEGAL STANDARD ....................................................................................................... 2

III. BACKGROUND ............................................................................................................... 3

IV. ARGUMENT .................................................................................................................... 5

    A. Jawbone Submitted a Frivolous Motion for Summary Judgment in Bad Faith .............. 5

    B. The Court May Award Fees for the Bad-Faith Submissions under 28 U.S.C. § 1927, under Federal Rule of Civil Procedure 56(h), or under the Court's Inherent Sanctions Power .................................................................................................................. 7

    C. Alternatively, Jawbone Should Be Precluded from Further Prejudicing Fitbit by Filing Multiple Summary Judgment Motions ................................................................... 8

V. CONCLUSION ................................................................................................................. 9

# I. INTRODUCTION

On June 14, 2016, Jawbone filed a Motion for Summary Judgment of Non-Infringement ("MSJ"), notwithstanding Fitbit's entreaties that such a motion was misguided and premature. On July 12, 2016, after Fitbit had opposed, Jawbone unilaterally filed a Notice of Withdrawal of its motion, without explanation, but with a statement that it was doing so "without prejudice." Fitbit takes exception to the notion that Jawbone's dispositive motion can simply be withdrawn "without prejudice" and without consequence, given that the motion was filed in bad faith and given that Fitbit incurred substantial costs in having to oppose it. Fitbit respectfully moves for the costs and fees that it incurred in dealing with Jawbone's folly.

Even without reviewing the substance, Jawbone's MSJ stood out for several reasons. First, although the MSJ was premised on how Jawbone's own products pair to a Jawbone app resident on a user's mobile device, *i.e.*, "cue" the user that pairing occurred, Jawbone did not include a declaration from a Jawbone engineer to describe the operation and behavior of its own products. Nor did Jawbone cite to any technical documents, including its own source code, to demonstrate the functionality of its products at issue in the MSJ. And finally, Jawbone's own expert did not submit an expert opinion based on his personal demonstration of how the accused products function. Instead, Jawbone and its expert reviewed and relied on a video posted by an anonymous YouTube user purporting to show the alleged functionality. For a motion based on the operation of Jawbone's own products, Jawbone conspicuously avoided the most reliable evidence of how the products operated.

Substantively, Jawbone's MSJ fared no better. Jawbone relied almost entirely on the YouTube video to argue that the "cueing" limitations of the asserted claims are not satisfied because the accused devices do not vibrate or flash their LED lights during the pairing process. What Jawbone did *not* mention in its motion, however, was that when a customer first purchases a Jawbone product from a retailer and operates it, that product does the very thing – vibrate and flash its LED display during the pairing process – that Jawbone denies as the basis of its MSJ.

It is unclear whether Jawbone was willfully blind to the operation and functionality of its own products in its rush to file a summary judgment motion, or whether Jawbone filed a misleading

motion early in the litigation in the hope that Fitbit was not yet familiar with the operation of the accused devices. Under either scenario, Jawbone's MSJ was improper, and Jawbone should be required to compensate Fitbit for the expense of opposing that frivolous motion. In the alternative, pursuant to the Court's Standing Order for Civil Cases, Jawbone should not be allowed to file further piecemeal summary judgment motions, as multiple, frivolous motions serve only to harass and burden both Fitbit and the Court.

## II.   LEGAL STANDARD

Under 28 U.S.C. § 1927, an attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." A "finding of subjective bad faith" is required to support sanctions under § 1927. *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989). This "bad faith" exists when "an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent" or when an attorney engages in "[t]actics undertaken with the intent to increase expenses or delay." *Id.*; *see also Estate of Blas ex rel. Chargualaf v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986). While bad faith is required to award sanctions under 28 U.S.C. § 1927, an action is not required to be completely meritless, as "[s]ome merit in counsels' actions . . . does not preclude an award under 28 U.S.C. § 1927." *Lone Ranger Television, Inc. v. Program Radio Corp.*, 740 F.2d 718, 727 (9th Cir. 1984).

Courts may also award sanctions under the Federal Rules with regard to summary judgment motions. Under Federal Rule of Civil Procedure 56(h), "[i]f satisfied that an affidavit or declaration under [Rule 56] is submitted in bad faith or solely for delay, the court—after notice and a reasonable time to respond—may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result." Fed. R. Civ. P. 56(h).

And finally, a court also has the inherent power to "assess attorneys' fees . . . when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 (1975); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991) ("Although the 'American Rule' prohibits the shifting of attorney's fees in most

cases, an exception allows federal courts to exercise their inherent power to assess such fees as a sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, as when the party practices a fraud upon the court, or delays or disrupts the litigation or hampers a court order's enforcement."). Further, the bad-faith standard for the award of fees "is not restricted to cases where the action is filed in bad faith," therefore "'[b]ad faith' may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766 (1980). The standard for issuing sanctions under a court's inherent power is higher than the standard for § 1927. Thus, "[w]hile recklessness may be the standard under § 1927, it is an insufficient basis for sanctions under a court's inherent power," and "[i]nstead, counsel's conduct must 'constitute[ ] or [be] tantamount to bad faith.'" *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996) (quoting *Roadway Express*, 447 U.S. at 767).

### III.   BACKGROUND

In this action, Fitbit accuses Jawbone's UP2, UP3, and UP4 devices, as well as the UP App software, of infringing three patents. *See* Complaint. Fitbit has asserted U.S. Patent Nos. 9,048,923 (the "'923 Patent"), 9,026,053 (the "'053 Patent"), and 9,106,307 (the "'307 Patent"). Each of these patents is entitled "System and Method for Wireless Device Pairing" and describes a process for "pairing" that "include[s] a system and method for wirelessly identifying and validating an electronic device in order to initiate a communication process with another device or a service." *See, e.g.*, '053 Patent at Abstract. This "pairing process" includes a "cueing" functionality that alerts the user—via feedback such as vibration or visual signals—to select a particular device as the device that the user intends to pair.

Prior to the filing of Jawbone's MSJ, Fitbit repeatedly informed Jawbone in multiple contexts that the accused Jawbone products satisfied the "cueing" limitations because they both vibrate and provide a visual indicator during the pairing process. Fitbit repeatedly stated in its infringement contentions (served in February 2016) that "the Jawbone [UP2, UP3, or UP4] will vibrate and flash its LED lights to cue the user to validate the pairing of the device." *See* Exhibits A-I (Exhibits 1-9 to Fitbit's Infringement Contentions). Fitbit even included photos of the flashing LEDs in its infringement contention charts for the UP4. *See, e.g.*, Exhibit C at 26; Exhibit F at 33; Exhibit I at 28

3

(Exhibits to Fitbit's Infringement Contentions).

More recently, Fitbit specifically communicated its infringement theory to Jawbone in connection with the MSJ. When Jawbone first suggested that it would file the MSJ, Fitbit informed Jawbone on a June 8, 2016 meet-and-confer call that Fitbit counsel had personally observed the Jawbone products performing the "cueing" limitations. *See* Chung Decl. at ¶ 3. Jawbone and Fitbit met and conferred to settle on a statement of undisputed facts for Jawbone's MSJ. *Id.* Jawbone proposed to include "undisputed" facts that stated that Jawbone's devices did not "cue" the user to validate a pairing request. *Id.* ¶¶ 2-3. Fitbit again rejected these statements as disputed—because Jawbone's products clearly exhibit the behavior accused in the "cueing" limitations. *Id.* Despite all the evidence and arguments to the contrary, Jawbone pressed ahead and filed a Motion for Summary Judgment of Non-Infringement on June 14, 2016. Dkt. 76 (MSJ).

Jawbone has had access to its own products, its own source code, and its own employees—including engineers who could easily describe the essential functionality of the devices—for the entirety of this action. But even though the entirety of Jawbone's motion was based on allegedly non-infringing behavior by the Jawbone products, the MSJ made no mention of any Jawbone employee and did not cite any Jawbone technical documents, including source code.

In fact, Jawbone's technical expert, who submitted a declaration in support of the MSJ, did not submit his own demonstration of the accused products. Instead, Jawbone's expert relied on a third-party YouTube video as his evidence of the relevant functionality. *See* MSJ at 8; Declaration of Kevin Almeroth in Support of Jawbone's MSJ, at ¶ 5. Jawbone's expert simply reviewed and commented on this anonymous YouTube video—for which Jawbone failed to lay any foundation whatsoever—as "evidence" to show the alleged non-infringing behavior.

Fitbit responded to Jawbone's MSJ on June 28, 2016. Dkt. 83. Fitbit's opposition detailed the fundamental errors in Jawbone's factual allegations about its own products, and included a declaration by Fitbit's technical expert, who directly examined Jawbone products and recorded multiple videos showing that Jawbone's products, upon being purchased and paired for the first time, unfailingly exhibited the flashing and vibrating behavior as stated in Fitbit's infringement contentions.

4

Even after being presented with this clear and overwhelming evidence confirming Fitbit's repeated statements about how Jawbone's devices functioned, Jawbone did not immediately acquiesce.  On July 1, 2016, Jawbone requested a one-week extension of time to file a Reply in support of its MSJ "due to the intervening holiday, the travel schedules of Jawbone's attorneys, and the numerous other pending matters between the parties."  Dkt. 85.  Finally, on its new deadline to file the reply brief, July 12, 2016, Jawbone withdrew its motion by filing its Notice of Withdrawal. Dkt. 86.

## IV.   ARGUMENT

**A.**   *Jawbone Submitted a Frivolous Motion for Summary Judgment in Bad Faith*

In the MSJ, Jawbone argued that "[a] cursory examination (whether by a lay person or a person knowledgeable in the art) of how the Accused Products undergo the process of pairing immediately reveals that no 'cue' is presented by the UP Product to the user to validate the request to pair—no vibration, flashing lights or other 'cues' occur on the wearable device between the time when the mobile device sends the request to pair to the UP Product and the time when the user validates the request to pair by 'touching and holding' the wearable device."  MSJ at 1.

By Jawbone's own admission, its examination of its own products was "cursory."  Even worse, its description of the functionality of its products was incorrect.  In order for the UP App and Jawbone's activity tracking devices to communicate, the devices must first be "paired" through a process that establishes a secure connection between the devices and the UP App running on a mobile device.  When the accused products are purchased from a store, and paired for the first time, they uniformly will each vibrate and flash their LED lights during the pairing process to prompt the user to confirm that the vibrating/flashing device is the correct device for pairing.  In other words, they exhibit the very behavior that *Jawbone argued never happens* as the basis for its MSJ.  Professor Daniel van der Weide, Fitbit's expert, described and recorded videos of this functionality in support of Fitbit's opposition to Jawbone's MSJ.  *See* Dkt. 83; Declaration of Daniel van der Weide attached to Dkt. 83.  Professor van der Weide observed that the behavior that appears to be shown in Jawbone's YouTube reference—the absence of flashing lights or vibration—does occur under some circumstances when a Jawbone device has been previously paired.  However, Professor van der

1  Weide also observed that the accused products uniformly exhibited the "cueing" behavior upon a first
2  pairing out of the box.  Jawbone failed to mention this instance of its products' operation—one that
3  must occur at least once for each device that is sold to and paired by a user.

4       Jawbone either failed to conduct the most rudimentary diligence of its own products, or
5  Jawbone knew exactly how the products performed but hoped that in this early stage of the litigation
6  with limited access to discovery, Fitbit would still be unaware of the overall operation of the accused
7  products.  After all, Jawbone had unfettered access to Jawbone products, Jawbone source code, and
8  Jawbone employees, any of which should have revealed that the MSJ did not properly describe the
9  functionality of the accused Jawbone devices.  Instead of relying on these easily accessible sources of
10 evidence, Jawbone elected to present an even more "cursory" review of its accused products and
11 simply relied upon hearsay evidence from an anonymous YouTube video.

12      Not only did Jawbone deliberately ignore the sources of information available to it, it also
13 sought to deny Fitbit access to those sources as well.  During the pendency of the MSJ, Jawbone
14 argued that "any discovery disputes should be deferred until the Court rules on our pending, case-
15 dispositive summary judgment motion."  Exhibit J.  Jawbone further proposed that Fitbit stipulate to
16 a discovery schedule that would have pushed off key dates for claim construction discovery until
17 after a decision was rendered on the MSJ.  *Id.*  By filing the MSJ early in the case, and by seeking to
18 withhold discovery on the most relevant evidence relating to that MSJ, Jawbone sought to dispose of
19 the case before Fitbit could obtain further details about the accused products.

20      In either scenario, Jawbone's motion evidenced bad-faith conduct.  If Jawbone simply
21 neglected to conduct an objectively reasonable examination of its own products before rushing to file
22 a summary judgment motion on non-infringement, this rush to force a case-dispositive motion on
23 Fitbit was reckless and resulted in needless, substantial expenses for Fitbit.  If, on the other hand,
24 Jawbone intentionally misrepresented the facts of its own products, then it knowingly advanced a
25 frivolous argument before this Court.

**B.**   *The Court May Award Fees for the Bad-Faith Submissions under 28 U.S.C. § 1927, under Federal Rule of Civil Procedure 56(h), or under the Court's Inherent Sanctions Power*

Jawbone's behavior here is sanctionable under one or more of the following authorities: 28 U.S.C. § 1927, Federal Rule of Civil Procedure 56(h), and/or under the Court's Inherent Sanctions Power.

Under § 1927, an attorney who "multiplies the proceedings" by unreasonable and vexatious litigation conduct can be required to remedy the costs and fees necessitated by that behavior. Here, Jawbone created unnecessary burden on and expenditure of resources by Fitbit by filing an obviously meritless Motion for Summary Judgment. Jawbone's motion was filed in bad faith, because Jawbone either intentionally, or with willful blindness, advanced a frivolous argument based on a mischaracterization of the functionality of its own products.

Federal Rule of Civil Procedure 56(h) also supports a grant of costs and fees incurred in responding to Jawbone's frivolous MSJ. Rule 56(h) applies to an "affidavit or declaration submitted in bad faith," and provides that:

> If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court--after notice and a reasonable time to respond--may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

Fed. R. Civ. P. 56(h). In support of its meritless motion, Jawbone submitted an equally meritless expert declaration that relied on an anonymous, foundationless YouTube video to describe the facts of the operation of Jawbone's products in a fundamentally incorrect manner.

Finally, the Court may exercise its inherent power to impose sanctions for unreasonable, vexatious litigation conduct. Sanctions under a court's inherent power "are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). For example, "an attorney's reckless misstatements of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case, are sanctionable under a court's inherent power." *Id.* As in

7

the Ninth Circuit's analysis in Fink, Jawbone's filing of a motion that misrepresented basic facts about Jawbone's own products was at least reckless in its failure to conduct any reasonable inquiry, and resulted in the filing of a completely frivolous MSJ that served only to harass Fitbit and distract resources for other matters pending between the parties.  At the same time, Jawbone sought to delay discovery and the progress of this case.

This Court should exercise its discretion and award Fitbit the attorneys' fees and costs it was forced to incur defending itself against Jawbone's unfounded summary judgment positions.  In total, Fitbit spent **$48,555.22**—$42,968.70 in attorneys' fees and approximately $5,586.52 in costs— responding to Jawbone's meritless MSJ (not including the fees incurred by Fitbit on the preparation of this motion).  *See* Chung Decl. ¶¶ 8-10; 17-19; 21.  The rates and amounts charged by Fitbit's counsel were reasonable.  Fitbit's counsel leanly staffed the briefing, despite the burden of responding to Jawbone's misrepresentations about the operation of its own products at this early stage of the proceeding.

**C.**   *Alternatively, Jawbone Should Be Precluded from Further Prejudicing Fitbit by Filing Multiple Summary Judgment Motions*

The Court can and should award costs and fees to compensate Fitbit for the expenses it has incurred in responding to Jawbone's frivolous MSJ.  However, if the Court finds monetary sanctions inappropriate, Jawbone should at least be precluded from bringing serial summary judgment motions in this action.  As stated in the Court's Standing Order for Civil Cases, "only one Motion for Summary Judgment, Partial Summary Judgment or Summary Adjudication may be filed by each party," "unless otherwise permitted by the Court."  The Standing Order is particularly prescient here, given that Jawbone rushed to burden Fitbit with responding to a summary judgment motion that fundamentally misrepresented the operation of its own products, tried to prevent discovery about those products from going forward, and then just as suddenly filed a Notice of Withdrawal, ostensibly "without prejudice."  Jawbone should not be rewarded for this vexatious behavior by being allowed to have a second bite (or multiple bites) at summary judgment; and Jawbone should not be allowed to use summary judgment motions as a distraction tactic or as a tactical attempt to draw out information from Fitbit.

## V. CONCLUSION

For the foregoing reasons, Fitbit's motion seeking costs and fees should be granted. Alternatively, Jawbone should be precluded from filing additional summary judgment motions without first obtaining leave of the Court.

Date: August 8, 2016

GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Frederick S. Chung*
　　　Frederick S. Chung

JOSH A. KREVITT (SBN 208552)
jkrevitt@gibsondunn.com
200 Park Avenue, 47th Floor
New York, NY 10166
Tel: (212) 351-4000
Fax: (212) 351-4035

WAYNE M. BARSKY (SBN 116731)
wbarsky@gibsondunn.com
JASON C. LO (SBN 219030)
jlo@gibsondunn.com
2029 Century Park East
Los Angeles, CA 90067-3026
Tel: (310) 552-8500
Fax: (310) 551-8741

MARK N. REITER
*(Admitted Pro Hac Vice Admission)*
mreiter@gibsondunn.com
2100 McKinney Avenue
Dallas, TX 75201-6912
Tel: (214) 698-3100
Fax: (214) 571-2900

FREDERICK S. CHUNG
fchung@gibsondunn.com
Y. ERNEST HSIN (SBN 201668)
ehsin@gibsondunn.com
NEEMA JALALI (SBN 245424)
njalali@gibsondunn.com
1881 Page Mill Road
Palo Alto, CA 94304
Tel: (650) 849-5300
Fax: (650) 849-5333

*Attorneys for Plaintiff Fitbit, Inc.*

FITBIT, INC.'S MOTION FOR SANCTIONS
CASE NO. 5:15-CV-4073-EJD

**CERTIFICATE OF SERVICE**

I, Frederick Chung, hereby certify that on August 8, 2016, I caused to be electronically filed the foregoing document with the Clerk of the Court via CM/ECF. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing systems.

Dated:   August 8, 2016                                          GIBSON, DUNN & CRUTCHER LLP


                                                                 By:    /s/ *Frederick S.Chung*
                                                                        Frederick S. Chung